**Petition for Writ of Mandamus Conditionally Granted and Majority and Dissenting Opinions filed December 23, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00275-CV

---

### IN RE WYATT FIELD SERVICE COMPANY, Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**125th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-44838**

---

## MAJORITY OPINION

This case presents our court its opportunity to address the next of the unintended consequences wrought on Texas mandamus practice due to the holding in *In Re Columbia*: exactly what is a "merits review," and how does an intermediate appellate court apply it to evaluate the "great weight and preponderance of the evidence"?

Real parties in interest, David McBride and Glenn Burns, sustained personal injuries due to an accident at a refinery owned by ExxonMobil Corporation in Baytown, Texas. Real parties sued relator, Wyatt Field Services Company, and ExxonMobil. Real parties settled with ExxonMobil prior to trial and argued that Wyatt was solely responsible for the accident. The jury returned a verdict that Wyatt was not negligent, but ExxonMobil was solely responsible for real parties' injuries. On real parties' motion, the Honorable Kyle Carter, presiding judge of the 125th District Court of Harris County, signed a new trial order in favor of real parties on March 3, 2014. The trial court's new trial order and the findings of fact reflect that the bases for granting a new trial are (1) the jury's findings that ExxonMobil was negligent and Wyatt was not were against the great weight and preponderance of the evidence; and (2) Wyatt's repeated injection of collateral source evidence into the case violated the motion in limine and tainted the jury's verdict.

Wyatt filed a petition for writ of mandamus on September 16, 2013, challenging the new trial order. We denied Wyatt's petition because it had not provided the entire trial record and, therefore, we could not ascertain whether the trial court had abused its discretion in granting a new trial. *See In re Wyatt Field Serv. Co.*, No. 14-13-00811-CV, 2013 WL 6506749, at *3 (Tex. App.—Houston [14th Dist.] Dec. 10, 2013, orig. proceeding) (mem. op.).

Wyatt filed the current petition for writ of mandamus, which includes the entire trial record. Wyatt again challenges the new trial order and requests that we compel the trial court to vacate its March 3, 2014 order and render judgment on the

jury's verdict.  *See* Tex. Gov't Code Ann. § 22.221 (West 2004); *see also* Tex. R. App. P. 52.  We conditionally grant the petition.

## I. STANDARDS OF REVIEW

### A. Mandamus Review of New Trial Orders Before and after *In re Columbia*

To be entitled to mandamus relief, a relator must demonstrate (1) the trial court clearly abused its discretion; and (2) the relator has no adequate remedy by appeal.  *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding).  A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts.  *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam).  "In determining whether the trial court abused its discretion with respect to resolution of factual matters, we may not substitute our judgment for that of the trial court and may not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable."  *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (orig. proceeding) (per curiam).  In other words, under an abuse of discretion standard, we defer to the trial court's factual determinations if they are supported by the evidence, but we review the trial court's legal determinations de novo.  *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

Although acknowledging that Texas trial courts have historically been afforded broad discretion in granting new trials, the Texas Supreme Court, in 2009, held that a trial court abuses its discretion by granting a motion for new trial without providing a reasonably specific explanation of the court's reasons for setting aside a jury verdict.  *See In re Columbia Med. Ctr. of Las Colinas,*

3

*Subsidiary, L.P.,* 290 S.W.3d 204, 210, 213 (Tex. 2009) (orig. proceeding) (holding "that discretion is not limitless"). Thus, the trial court abused its discretion by ordering a new trial based solely on "in the interest of justice" because that reason was not sufficiently specific. *Id.* at 215.

The long-established rule in Texas is that, except in very limited circumstances, an order granting a motion for new trial rendered within the trial court's plenary power is not subject to review either by direct appeal from that order or from a final judgment rendered after further proceedings in the trial court. *Cummins v. Paisan Constr. Co.*, 682 S.W.2d 235, 236 (Tex. 1984) (per curiam); *Hull v. S. Coast Catamarans, L.P.*, 365 S.W.3d 35, 40 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). Before *In Re Columbia*, only two such circumstances had been identified: (1) when the trial court's order was wholly void; and (2) when the trial court erroneously concluded that the jury's answers to special issues were irreconcilably in conflict. 290 S.W.3d at 208−09; *see also Wilkins v. Methodist Health Care Sys.*, 160 S.W.3d 559, 563 (Tex. 2005).[1] The court in *Columbia* held the long-established rule, which denies aggrieved parties an adequate remedy by appeal, demonstrates why mandamus relief must be afforded in what it described

---

[1] In *Wilkins*, the court noted that "[e]xcept in very limited circumstances, an order granting a motion for new trial rendered within the trial court's plenary power is not reviewable on appeal." 160 S.W.3d at 563. However, new trial orders that were void or were based on the trial court's erroneous conclusion that the jury's answers to special issues were irreconcilably in conflict were subject to review on mandamus. *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex. 1985) (orig. proceeding); *Johnson v. Court of Civil Appeals for the Seventh Supreme Judicial Dist. of Tex.*, 350 S.W.2d 330, 331 (Tex. 1961) (orig. proceeding).

4

as "exceptional circumstances"—the protection of the right to a jury trial.[2] 290 S.W.3d at 210.

Subsequently, the Texas Supreme Court articulated a two-prong test for determining whether a trial court abused its discretion in granting a new trial. *See In re United Scaffolding, Inc.*, 377 S.W.3d 685 (Tex. 2012) (orig. proceeding). A trial court does not abuse its discretion so long as its stated reason for granting a new trial (1) is a reason for which a new trial is legally appropriate (such as a **well-defined legal standard** or a defect that probably resulted in an improper verdict); and (2) is specific enough to indicate that the trial court did not simply parrot a pro forma template, but rather derived the articulated reasons from the particular facts and circumstances of the case at hand. *Id*. at 688–89.

More recently, the supreme court held that an appellate court may conduct a "merits review" of the correctness of a new trial order setting aside a jury verdict that facially comports with *Columbia* and *United Scaffolding*. *In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 757−59 (Tex. 2013) (orig. proceeding).[3] Specifically, the court explained that, if, despite conformity with the procedural requirements of its precedent, a trial court's articulated reasons are not "actually true," the new trial order may be an abuse of discretion. *Id*. at 758. Thus, it is

---

[2] It is unclear whether the "exceptional circumstances" extend to all jury trials or only to those where a second trial would involve undue "time, trouble and expense." The court did not expressly balance the benefits of mandamus against the detriments. *See Columbia*, 290 S.W.3d at 209−10; *see also In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding) (explaining that the adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against the detriments).

[3] The high court did not indicate the circumstances under which an intermediate appellate court may decline to conduct such a review.

well-settled that merits-based review of new trial orders granted following a jury trial are now available to litigants.  *See, e.g., In re Health Care Unlimited, Inc.,* 429 S.W.3d 600, 602 (Tex. 2014) (orig. proceeding) (per curiam) (noting that the court had previously held in *Toyota* that appellate courts may conduct a merits-based review of the trial court's articulated reasons for granting a new trial); *In re Whataburger Restaurants LP*, 429 S.W.3d 597, 598 (Tex. 2014) (orig. proceeding) (per curiam) (same).

## B.  Against the Great Weight and Preponderance of the Evidence

Ironically, although the high court has directed trial courts to articulate a **well-defined legal standard** as one indicia that its new trial order is legally appropriate, *see United Scaffolding*, 377 S.W.3d at 685, it has enunciated a new standard of review for intermediate appellate courts to use in implementing its directive: the "merits-based review."  *See Toyota Motor Sales*, 407 S.W.3d at 757; *see generally* W. Wendall Hall, *Standards of Review in Texas*, 42 ST. MARY'S L.J. 3 (2010).  It provided little guidance to review the trial court's ruling where, as here, one reason given by the trial court for granting a new trial is that the evidence is against the great weight and preponderance of the evidence.[4]

---

[4] The panel granted oral argument on the specific issue of what standard of review applies to this case.  We asked the parties to address the following at oral argument:

1. Is the standard of review any different from when a trial judge grants a new trial on the basis that the verdict was against the great weight and preponderance of the evidence versus when the appellate court does?  If so, explain the difference in the articulated standard.

2. Do we have to conduct a harm analysis as to the collateral source violations?

In a factual sufficiency review, an appellate court considers and weighs all the evidence, both supporting and contradicting the finding. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406−07 (Tex. 1998). When a party attacks the factual sufficiency of an adverse finding on an issue on which it had the burden of proof, the party must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). A reviewing court considers all the evidence and will set aside the judgment only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). The fact finder is the sole judge of the credibility of the witnesses and the weight given their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). When presented with conflicting testimony, the fact finder may believe one witness and disbelieve others, and it may resolve inconsistencies in the testimony of any witness. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). The reviewing court "must not merely substitute its judgment for that of the jury." *Golden Eagle Archery, Inc.*, 116 S.W.3d at 761.

After *Toyota,* the Texarkana Court of Appeals addressed an order granting a new trial on the ground that the jury's finding in favor of the defendants was

3. Should the new trial order or the judge's findings of fact control in the event of any discrepancy?

4. What weight do we give the trial judge's findings versus the jury's findings?

5. Assuming the interest of justice alone is insufficient to grant a new trial, how do we incorporate that finding by the trial judge?

7

against the great weight and preponderance of the evidence. *See In re Baker*, 420 S.W.3d 397, 400 (Tex. App—Texarkana 2014, orig. proceeding). The appellate court framed the issues in the case as whether the plaintiffs had met their burden to prove that the relator had breached his duty of care and that such negligence was a proximate cause of the their injuries. *Id.* at 400. The court set forth the factual sufficiency standard of review, reviewed all the evidence, observed that the case turned on the relator's credibility, and held that evidence was factually sufficient to support the adverse finding if the evidence was such that reasonable minds could differ on the meaning of the evidence or inferences and conclusions drawn therefrom. *Id.* at 402−04. The court, therefore, concluded that "the grant of the new trial improperly intruded on the jury's province," and the trial should have rendered judgment on the verdict. *Id.* at 404; *see also In re Zimmer, Inc.*, No. 05-14-00940-CV, — S.W.3d —, 2014 WL 6613043, at *8 (Tex. App.—Dallas Nov. 21, 2014, orig. proceeding) (stating that "we see no reason to believe the standards for factual sufficiency review in new trial mandamus proceedings should differ from the standards of review on appeal," and holding, after a cumbersome review of the forty-one-volume record, that the trial court incorrectly substituted its credibility decisions for those of the jury and weighed the evidence differently than the jury weighed the evidence).[5]

---

[5] The First Court of Appeals addressed a new trial order, which granted a new trial based in part on the trial court's determination that the jury's finding that the insurance company did not breach the homeowner's policy was contrary to great weight and preponderance of the evidence. *See In re United Servs. Auto. Ass'n*, No. 01-13-00508-CV, — S.W.3d —, 2014 WL 4109756, at *5 (Tex. App.—Houston [1st Dist.] Aug. 21, 2014, orig. proceeding [mand. filed]). The court stated that it must review "all the evidence in a light favorable to the verdict and must assume that the jurors resolved all conflicts in the evidence in accordance with the verdict." *Id.* at *7 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 821 (Tex. 2005)). The appellate court

Real parties take the position that, in conducting the traditional factual sufficiency review, the appellate courts will not give any deference to the trial court's "significant discretion" in granting new trials. Instead, according to real parties, the appellate courts will essentially be performing their own de novo factual sufficiency review of the cold record to reach a different conclusion.

The Texas Supreme Court acknowledged that "appellate courts benefit from the hindsight that a complete record provides. Trial courts, on the other hand, must make difficult, often dispositive, decisions based on their recollection and best judgment alone, frequently without the aid of full records, transcripts, or briefing." *Toyota Motor Sales*, 407 S.W.3d at 761. However, the court also made clear that the trial court's stated reasons for granting a new trial must be supported by record. *See id.* at 759 ("Having concluded that the reasons articulated in a trial order are reviewable on the merits by mandamus, we now evaluate the trial court's grant of new trial against the underlying record."). Moreover, while the court has not retreated from its position that trial courts have significant discretion in granting new trials, "such discretion should not, and does not permit a trial judge to substitute his or her own views for that of the jury without a valid basis." *Columbia*, 290 S.W.3d at 212.

---

found that the trial court abused its discretion by granting a new trial on this ground. We note that, in citing to *City of Keller*, the court articulated the standard for reviewing the legal sufficiency of the evidence. *See Augusta Barge Co. v. Five B's, Inc.*, No. 01-13-00092-CV, 2014 WL 4219449, at *3 (Tex. App.—Houston [1st Dist.] Aug. 26, 2014, no. pet. h.) (mem. op.) ("In conducting a legal sufficiency review, we consider all of the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it."); *see also Wells v. Johnson*, 443 S.W.3d 479, 493(Tex. App.—Amarillo 2014, pet. filed) (explaining that, in conducting a factual sufficiency review, the court of appeals does not consider the evidence in the light most favorable to the finding).

The position advocated by real parties would leave the courts of appeals with no ability to review new trial orders based on factual insufficiency. We do not believe this is the result intended by the Texas Supreme Court in providing for mandamus review of new trial orders. In a mandamus proceeding, we may not substitute our judgment for that of the trial court. *Sanders*, 153 S.W.3d at 56. But neither may the trial court substitute its judgment for that of the jury in granting a new trial. *Columbia*, 290 S.W.3d at 212. The method for ensuring that the trial court does not substitute its judgment for that of the jury, is to confirm that the court's reasons for granting a new trial are valid and correct, i.e., supported by the trial record. *See Toyota Motor Sales*, 407 S.W.3d at 758 ("If . . . a trial court's articulated reasons are not supported by the underlying record, the new trial order cannot stand."). Thus, using a factual sufficiency standard, we will engage in a review of the entire trial record to determine whether it supports the trial court's reasons for granting a new trial. If the record does not support the trial court's stated reasons, then the trial court will have abused its discretion in granting a new trial. *See id.* at 761 (holding the trial court abused its discretion by granting a new trial because the record did not support the articulated reason).

## II. Background

ExxonMobil processes crude oil at its refinery to turn it into gasoline. A by-product of that process is tar. A "flexicoker" unit at the refinery breaks down the tar into pure carbon at 1300 degrees. The carbon, which is like sand, is called "coke." The coke is "heated up and sent back to the reactor" as the source of heat for the reactor.

ExxonMobil performs a "turnaround" on the flexicoker unit about every two to three years, during which maintenance is performed on the unit. It takes about two years to plan the turnaround, and the unit has to be shut down for the maintenance work to be performed. As part of the turnaround process, the heater of the flexicoker unit, which is about 1300 degrees, must be cooled down in order for the maintenance work to be performed. Water and steam are sprayed from nozzles to cool down the heater. Because coke builds ups in the spray nozzles and clogs them, ExxonMobil designed the system so that, during the time between the turnarounds, the spray nozzles were replaced with "dummy nozzles." The only function of the dummy nozzles was to act as "placeholders" for the spray nozzles.

To remove the dummy nozzle, a worker would pull the nozzle out a certain distance, but not so far as to pull it out of the heater. An ExxonMobil employee would shut the gate valve, which acted as a barrier to keep the steam and coke from coming out. The dummy nozzle could then be pulled out all the way out. A safety chain was installed on the nozzle. When installed properly, the safety chain only allowed the dummy nozzle to be pulled out a certain distance so that the nozzle was not pulled out too far before the gate valve was closed and thereby letting steam and water escape.

On July 3, 2011, McBride and Burns, as LWL, Inc. employees, were assigned to remove the dummy nozzles. They were pulling out a dummy nozzle, when it came out too far, the gate valve was not shut, and steam and coke spewed out of the heater. McBride and Burns were thrown, and stem and coke were sprayed on them, causing burns and other injuries.

Subsequent to the accident, ExxonMobil performed a root cause analysis and determined that the safety chain had been "anchored to the wrong location allowing the nozzle to be detached completely out of its packing before the chain stopped." ExxonMobil also determined that Wyatt had put the dummy nozzles back in place and reattached the safety chain in the previous turnaround in 2008.

McBride and Burns sued Wyatt for negligence, negligence per se, and gross negligence for improperly installing a safety chain. They also sued ExxonMobil, which settled the case before trial.

The case went to trial on January 30, 2013. Wyatt did not dispute that the safety chain was installed in an incorrect location, the condition was unreasonably dangerous, or real parties were not warned of the incorrect installation. Wyatt, however, disputed that it was the contractor that put the dummy nozzles back in place and reattached the safety chains in 2008. Real parties argued to the jury that Wyatt was solely liable, ExxonMobil was not liable because it had no actual knowledge that the safety chains were in an incorrect location, and LWL bore no responsibility for the accident.

On February 13, 2013, the jury reached a verdict, finding that (1) Wyatt was not negligent; (2) LWL was not negligent; (3) ExxonMobil exercised or retained some control over the manner in which the work in question was performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and (4) ExxonMobil's negligence with respect to the condition of the dummy nozzle system proximately caused the occurrence. Although the jury found damages for McBride ($902,681.41) and Burns ($2,905,898.95), neither

12

would recover because of the jury's no-negligence finding as to Wyatt and ExxonMobil's settlement prior to trial.

## III. REAL PARTIES' MOTION FOR NEW TRIAL & COURT'S ORDER

Real parties filed a motion for new trial, arguing (1) the jury's findings that Wyatt was not negligent and the accident was caused by Exxon's negligence were contrary to the great weight and preponderance of the evidence; and (2) Wyatt's injection of collateral sources into the evidence tainted the verdict.

On March 4, 2013, the trial court held a hearing on real parties' motion for new trial and ordered a new trial as follows:

> The Court has considered Plaintiffs' motion for a new trial, all responsive briefing, the arguments of counsel, and the Court's own observations during the trial of this case. The Court believes Plaintiffs' motion is meritorious and should be granted.
>
> The jury's answer to Question 1(a) was contrary to the overwhelming weight of the evidence. The great and overwhelming preponderance of the evidence showed that the safety chain at issue in this case was installed in an incorrect location. The great weight and overwhelming preponderance of the evidence also showed that the incorrect location of the safety chain created an unreasonably dangerous condition. The great weight and overwhelming preponderance of the evidence introduced at trial confirmed that Defendant Wyatt Field Services Company installed the safety chain in 2008 and that the chain remained in the same location until July 3, 2011. Further, the great weight and overwhelming preponderance of evidence introduced at trial confirmed that Plaintiffs were never warned that the safety chain was incorrectly installed and had no reason to be aware of the danger. The interests of justice require a new trial.

13

A new trial is also required because Defendant and its witnesses regularly injected evidence of collateral sources into the case in violation of the Court's order granting Plaintiff's [sic] motion in limine on this topic. This inadmissible evidence tainted the jury's verdict. Good cause and the interests of justice require the Court to grant a new trial.

On April 9, 2013, the trial court entered the following findings of fact in support of its new trial order, addressing ExxonMobil's actual knowledge, in addition to the prior grounds expressed in its order March 4, 2013 order:

1. The jury's finding that Defendant Wyatt Field Services Company was not negligent is against the great weight and preponderance of the evidence.

2. The jury's finding that Defendant Wyatt Field Services Company was not negligent renders the jury's verdict manifestly unjust.

3. The jury's finding that ExxonMobil had actual knowledge of any unreasonable risk of harm/condition is not supported by factually sufficient evidence.

4. The jury's finding that ExxonMobil had actual knowledge of any unreasonable risk of harm/condition renders the jury's verdict manifestly unjust.

5. Based on the combination of factually insufficient liability findings concerning Defendant Wyatt Field Services Company and ExxonMobil, the Court finds that the jury failed to follow the Court's instructions and simply decided to place all responsibility on ExxonMobil without regard to the legal standards set forth in the Court's charge.

6. Defendant Wyatt Field Services Company repeatedly violated the Court's order granting Plaintiff's motion in limine.

14

7. Defendant Wyatt Field Services Company ignored this Court's admonishments about the motion in limine.

8. Defendant Wyatt Field Services Company's repeated injection of information into this case that was inadmissible, including but not limited to information regarding benefits available to Plaintiff from collateral sources, tainted the verdict and rendered it manifestly unjust.

The trial court also entered the following conclusions of law:

1. The Court concludes that it is entitled to grant a new trial when it finds the jury verdict is contrary to the great weight or is not supported by factually sufficient evidence.

2. The Court concludes that it is entitled to grant a new trial when it finds that the injection of inflammatory collateral matters (such as collateral sources) poisons the verdict.

3. The Court concludes that it is entitled to grant a new trial when it is required in the interest of justice.

This mandamus followed. Wyatt claims the trial court abused its discretion in granting real parties' motion for new trial because (1) the jury's finding that Wyatt was not negligent was not against the great weight and preponderance of the evidence; (2) the jury's finding that ExxonMobil had actual knowledge of the condition that caused the injuries was immaterial and could have no impact on the verdict after the jury had found Wyatt was not negligent; (3) any violations of the motion in limine on collateral sources made no mention of any fact bearing on Wyatt's liability; and (4) the Texas Supreme Court has disapproved of granting a new trial based on the "interests of justice."

The new trial was granted following a very long and very expensive jury trial. We find that this case presents the "exceptional circumstances" found in *Columbia* to warrant mandamus review. *See* 290 S.W.3d at 208−210.

The trial court's new trial order and the findings of fact reflect that the bases for granting a new trial are (1) the jury's findings that ExxonMobil was negligent and Wyatt was not were against the great weight and preponderance of the evidence; and (2) Wyatt's repeated injection of collateral source evidence into the case violated the motion in limine order and tainted the jury's verdict. We hold that these are reasonably specific reasons facially comporting "with *Columbia's* procedural 'form' requirements." *See Toyota Motor Sales*, 407 S.W.3d at 759 (comparing new trial order in that case with new trial order at issue in *Columbia*, which merely asserted "in the interest of justice" as the basis for granting a new trial). The stated reasons for granting the new trial here—the jury's verdict is against the great weight and preponderance of the evidence and evidence injected into the record in violation of a limine order tainted the verdict—are also legally appropriate and satisfy *United Scaffolding*. *See In re United Servs. Auto Ass'n,* 2014 WL 4109756, at *7 (holding "against the great weight and preponderance of the evidence" is a legally appropriate basis for granting a new trial); *In re City of Houston*, 418 S.W.3d 388, 393 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding) (holding that the order granting a new trial on violations of a limine order, among other bases, satisfied *United Scaffolding* standard).

Having determined that the new trial order facially complies with the requirements articulated in *Columbia* and *United Scaffolding*, we must determine whether the trial court's stated reasons for granting a new trial are valid and correct

16

by conducting a careful "merits review" of the record. *See Toyota Motor Sales*, 407 S.W.3d at 759 ("Simply articulating understandable, reasonably specific, and legally appropriate reasons is not enough; the reasons must be valid and correct.").

## IV. JURY'S NO-LIABILITY FINDING AS TO WYATT

In its first issue, Wyatt claims that the trial court's finding that the jury's verdict as to Wyatt's negligence was against the great weight and preponderance of the evidence is not supported by the record. The trial court set forth the following in support of its finding: (1) the safety chain was installed in an incorrect location; (2) the incorrect location of the safety chain created an unreasonably dangerous condition; (3) Wyatt installed the safety chain in 2008, and it remained in the same location until July 3, 2011; and (4) real parties were never warned that the safety chain was incorrectly installed and had no reason to be aware of the danger.

Wyatt did not dispute at trial that the safety chain was installed in an incorrect location, the condition was unreasonably dangerous, or that real parties were not warned of the incorrect installation. Instead, Wyatt only disputed that it installed the safety chain in 2008, and that the chain remained in the same location until July 3, 2011.

Robert Merryman, who was recently retired, had worked as a turnaround planner for ExxonMobil since 1990. Merryman testified that the 2008 turnaround involved about 20,000 activities. ExxonMobil kept track of the activities and the schedule with a computer program known as "Primavera." The Primavera printout for the 2008 turnaround showed that Wyatt reinstalled the dummy nozzles and reconnected the safety chains. Merryman saw no documents suggesting that any contractor other than Wyatt installed the safety chain. Merryman also testified

17

that, if another contractor had replaced the dummy nozzles and safety chains, then such contractor would have wanted credit and compensation for the work.

Peter Howell, plaintiff's expert in refineries and process safety, testified that, based on the documents and Primavera, Wyatt was assigned the job of reinstalling the dummy nozzles and connecting safety chains to the nozzles. Furthermore, Howell testified about Plaintiff's Exhibit 22, an email chain regarding which contractor replaced the dummy nozzles and reattached the safety chains. Tim McCarthy, refinery manager for the fuels department, which included the flexicoker unit, led ExxonMobil's root cause investigation. McCarthy sent an email, on August 3, 2011, to Tommy Stanley, a turnaround manager, asking who had performed the dummy nozzle installation in the 2008 turnaround; Stanley replied that Wyatt had performed the work in 2008. Howell testified that he did not see any documents showing that Wyatt did not do the work; instead, all the documents he reviewed showed that Wyatt had done the work. Howell further testified that ExxonMobil hired Wyatt to the do the quality control, which means that Wyatt was to make sure all the work had "been done per the drawings." Howell stated that either Wyatt did not perform the quality control or it did not do it properly.

Wyatt's expert, Russ Elveston, who worked as an OSHA safety compliance officer for almost thirty years, stated on cross-examination that Wyatt was assigned the job of putting in the safety chains and "more likely than not that Wyatt did it." Elveston further explained that "[i]t showed up on at least one or two documents that indicated that [Wyatt] would be assigned it." Elveston noted that the documents showing Wyatt did the work all stem from the Primavera entry.

18

However, Elveston limited his response that Wyatt performed the work: "To say with one hundred percent certainty that they did it, I won't do it."

Wyatt's corporate representative, James Jordan, testified regarding whether Wyatt performed the work. Jordan stated that "[w]e have nothing yet that actually confirms" that Wyatt installed the chain in 2008, even though Jordan had gone through Wyatt's documents trying to find information that would confirm that Wyatt did the work. Jordan stated that the documents showing that Wyatt did the work are "all based on that Primavera." With regard to Primavera, Jordan testified that "[o]n face value, that document says that Wyatt — it was Wyatt's work." However, Jordan said "there should be more documents out there that indicate when it was done, who did it, and have all the sign-offs accordingly." Jordan admitted that he had seen not seen any documents showing that Wyatt had been pulled off the job of installing the chains. Jordan testified that ExxonMobil did the quality control on Wyatt's work in 2008.

There was also evidence that the dummy nozzle and chain had not been changed or worked on since the 2008 turnaround. Howell explained that a work order would be required for any work to have been performed on the dummy nozzles. ExxonMobil provided Howell with a list of all work orders for the flexicoker unit for the period between 2008 and July 3, 2011. None of the work orders showed that there was any work performed on the dummy nozzles.

Jordan also testified that he did not have any documents showing that the chain had been moved between 2008 and July 3, 2011. Elveston explained that, if it had just been a single nozzle, there would be a possibility that the chain had been changed. Elveston further stated that "[s]ince all of them were set up the same way

and there was no evidence that any changes had been made, although, again, you cannot rely on two and a half years. You're not absolutely sure that something didn't happen."

Real parties argue there was undisputed proof that no one was likely to go near the safety chains without a reason and specific authorization. Howell testified that the dummy nozzles are located on platform forty feet above the ground, next to the heater, which reaches a temperature of 1300 degrees. McBride and Burns participated in an hour-long general safety meeting and a "toolbox meeting" to discuss what they were going to and how they were going to do it. They also did a walk-through with their LWL supervisor. An air-conditioning vent was set to blow on them. McBride stated that they were going to work in twenty-minute shifts because of the heat. They wore fire retardant clothing, vests with ice packs, aluminized suits, which are four inches thick, "boots that go over our boots," jackets, gloves, and helmets. In other words, any alleged subsequent work on the dummy nozzles and chain would require planning.

Wyatt argues that despite the findings that it had installed the safety chain in 2008, and that the chain remained in the same location until July 3, 2011, the grounds stated by the trial court do not necessarily lead to the conclusion that Wyatt was negligent. Wyatt asserts that the jury was presented with evidence of the deficiency of the ExxonMobil's engineering drawings, which could have led the jury to determine that Wyatt was not negligent. Wyatt was to have received engineering drawings in connection with the work on the dummy nozzles. Elveston testified that ExxonMobil's engineer drawing "is less than ideal. Going strictly by the drawing and what we saw out there is not really representative of

what was out there." Elveston further stated "The drawing . . . does not have some of the elements that I would expect to see on it."

Elveston also testified that "the diagram with the little bubble that says the chain is supposed to be attached here" that was on the engineering drawing was not a warning. There was no procedure describing the purpose of chain, which was referred to as the "blow out" chain in the documents. He explained that there was "no mention of safety, warning any type of caution, make sure it's done this way, there is no procedure going. . . . A drawing is a nice reference but without a written procedure and going through it step by step to make sure and including all the hazards that's going to be there and all the precautions necessary it's just not — it just doesn't meet the requirements to the standard." Elveston concluded that "you have the procedures to tell you how to put stuff in the right place."

Howell stated in his report that the design of the dummy nozzle system was inadequate. Howell's testimony at trial differed: "The design could have been better than what it was and it could have been designed so that this incident would not have occurred, but the design that they had was adequate." Howell testified to the lack of written procedures for the system.

Howell testified that Wyatt was provided with a drawing that "showed exactly where it's supposed to be attached," but the drawing is not a "written procedure." Howell explained that there were no written procedures for safely removing and installing dummy nozzles and he believed that ExxonMobil should have had such written procedures. According to Howell, without written procedures, it is difficult to ensure that the contractors' workers are properly trained, including for the task of reinstalling the dummy nozzles. These

21

procedures can reduce human error such as attaching the safety chain in the wrong place, and, if there had been a written procedure for attaching the chain in the correct location, along with a reference to the drawing, "[i]t would have reduced the probability of this incident."

Howell also explained that, if the ExxonMobil employees, who were present before and during the removal of the dummy nozzle, had been properly trained, they would have seen that the safety chain was not properly installed and could have stopped the job until the chain had been correctly installed. According to Howell, ExxonMobil has the responsibility to train employees to perform specific jobs such as installing or withdrawing the dummy nozzle.

Howell further testified that ExxonMobil performed an inadequate job hazards analysis concerning the dummy nozzles. ExxonMobil did not consider a blowout when the dummy nozzle was retracted, which would expose workers to high temperature hydrocarbons and poisonous hydrogen sulfide.

We have reviewed all the evidence, both that which supports and contradicts the jury's finding that Wyatt was not negligent. *See Maritime Overseas Corp.*, 971 S.W.2d at 406−07. The evidence regarding whether Wyatt performed the installation of the safety chains in 2008 was disputed at trial. The jury could have found Jordan's testimony that he found nothing in Wyatt's files to confirm that Wyatt had done the work was more credible than the testimony based on a single computer entry showing that Wyatt had done the work. *See Golden Eagle Archery, Inc.*, 116 S.W.3d at 761; *McGalliard*, 722 S.W.2d at 697. The reason for the improper installation was also disputed. The jury could have given more weight to testimony that ExxonMobil's design of the dummy nozzle system was

22

not adequate and that this accident might not have happened if ExxonMobil had had written procedures concerning the proper installation of the safety chain. Given the presence of conflicting evidence and the jury's apparent resolution of credibility of witnesses and giving greater weight to evidence favoring Wyatt, the jury's finding that Wyatt was not negligent is not against the great weight and preponderance of the evidence. Thus, we hold that the trial court abused its discretion by finding that the jury's answer that Wyatt was not negligent is against the great weight and preponderance of the evidence. *See Columbia*, 290 S.W.3d at 212 (explaining that the trial court may not substitute its judgment for that of the jury when it grants a new trial). We sustain Wyatt's first issue.

## V. JURY'S LIABILITY FINDING AS TO EXXONMOBIL

In its second issue, Wyatt contends that the trial court abused its discretion by granting real parties a new trial based on its finding that there was no evidence that ExxonMobil had actual knowledge of the condition that caused real parties' injuries. Wyatt primarily argues that any error by the jury in finding ExxonMobil liable could have no effect on the verdict after the no-liability finding as to Wyatt and, therefore, was harmless.

A jury question is immaterial when it should not have been submitted, or when it was properly submitted but has been rendered immaterial by other findings. *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994). A jury question is also immaterial when its answer can be found elsewhere in the

verdict or when its answer cannot alter the effect of the verdict.[6]   *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995).

As addressed above, we have concluded that granting a new trial based on the jury's no-liability finding as to Wyatt was against the great weight and preponderance of the evidence is not a valid reason because it is not supported by the record.  Real parties settled with ExxonMobil prior to trial and will not recover any damages from ExxonMobil as a result of any verdict against it.  Thus, the jury's no-liability finding in favor of Wyatt renders any liability finding against ExxonMobil immaterial.  *Cf. Ramsey v. Lucky Stores, Inc.*, 853 S.W.2d 623, 635 (Tex. App.—Houston [1st Dist.] 1993, writ denied) ("A zero award presents no reversible error when the jury finds on sufficient evidence that defendant committed no negligent act, because even if damages were awarded, the trial court would still be required to enter the take-nothing judgment it did enter.").  We sustain Wyatt's second issue.

## VI. MOTION IN LIMINE

In its third issue, Wyatt claims the trial court abused its discretion by granting real parties' motion for new trial based on violations of the court's limine order prohibiting the introduction of collateral source evidence without first approaching the bench for a ruling.

---

[6] Real parties assert that the jury's answer on Wyatt's liability is not the only relevant finding at issue.  According to real parties, Texas Rule of Civil Procedure 320 does not require trial courts to consider each jury answer in a vacuum.  "When it appears that a new trial should be granted on a point or points that affect only a part of the matters in controversy and that such part is clearly separable without unfairness to the parties, the court may grant a new trial as to that part only."  Tex. R. Civ. P. 320.  Without explanation, real parties contend that the trial court cannot grant a separate trial as to only a part of this case.

There were two occasions in which collateral source evidence was brought up in front of the jury. Both instances involved Wyatt's attorney questioning Robert Cox, Wyatt's vocational rehabilitation expert, on direct examination. The following took place in the first incident:

> Q. Okay. And to the extent that and this seems like a silly question. If you basically — If I tell you he can't lift anything. He can't look up, he can't climb, he can't turn his head and psychologically he can't join the workforce, I mean, do you have any options for vocational rehabilitation?
>
> A. No, ma'am.
>
> Q. Okay.
>
> A. If a person has those sorts of limitations then I would try to get them signed up for Social Security for disability.
>
> MR. J. ITKIN: Objection, your Honor.
>
> MR. C. ITKIN: Your Honor, can we approach, please?

The trial court then conducted a bench conference outside the hearing of the jury. Real parties' counsel did not request an instruction to disregard, but suggested that Cox be admonished when the court took a break.

Wyatt's attorney then resumed direct examination of Cox, and the following testimony came out:

> Q. Okay. And you — do you sometimes recommend some additional training for folks to get into a position where they have other job opportunities available?
>
> A. Yes. Short term, on-the-job training.

25

Q. Okay. Could be even, I mean, it could be a long time but if you have training for three, four, five, six months, does that open up more opportunities to you?

A. Not to me but to the person who is trying to get re-employment, yes, ma'am.

Q. Fair enough.

A. If I may say to be sure that everyone understands these are services that are available throughout Texas, through the Department of —

MR. ITKIN: Your Honor —

The trial court then announced that they were going to take a break. While the jury was out of the courtroom, the trial court instructed Cox not to testify about government assistance or any other collateral source for compensation. Real parties' counsel suggested including an instruction in the jury charge not to consider collateral source evidence rather than giving an instruction to disregard when the jury returned to the courtroom because that would have called more attention to Cox's testimony. The trial court stated that it was granting real parties' request for jury charge instruction.

Later, at the charge conference, real parties' counsel reminded the trial court that "[w]e had the issue of collateral benefits. I think we agreed between the party [sic] to put an instruction in." Wyatt objected to the inclusion of such an instruction in the charge, and real parties then stated they could take up the issue post-trial.

Wyatt argues that the testimony makes no mention of any fact that could possibly bear on Wyatt's liability, and the jury's damages findings are immaterial

in light of the no-liability finding in favor of Wyatt. The purpose of a motion in limine is to prevent the other party from asking prejudicial questions and introducing evidence in front of the jury without first asking the court's permission. *Weidner v. Sanchez*, 14 S.W.3d 353, 363 (Tex. App.—Houston [14th Dist.] 2000, no pet.). A motion in limine preserves nothing for review. *In re R.V., Jr.*, 977 S.W.2d 777, 780 (Tex. App.—Fort Worth 1998, no pet.). The complaining party must immediately object and also request the trial court to instruct the jury to disregard the evidence. *State Bar of Tex. v. Evans*, 774 S.W.2d 656, 658 n.6 (Tex. 1989) (per curiam); *Weidner*, 14 S.W.3d at 363.

When evidence is placed before the jury in violation of a motion in limine, an instruction to disregard is generally sufficient to cure error. *Barnes v. Univ. Fed. Credit Union*, No. 03-10-00147-CV, 2013 WL 1748788, at *12 (Tex. App.—Austin Apr. 18, 2013, no pet.) (mem. op.). Violations of an order on a motion in limine are incurable if instructions to the jury would not eliminate the danger of prejudice. *Onstad v. Wright*, 54 S.W.3d 799, 805 (Tex. App.—Texarkana 2001, pet. denied) (citing *Dennis v. Hulse*, 362 S.W.2d 308, 309 (Tex. 1962)).

Generally, the failure to request the court to instruct the jury to disregard the testimony results in waiver of the alleged error where the instruction would have cured the error. *In re B.W.*, 99 S.W.3d 757, 760 (Tex. App.—Houston [1st Dist.] 2003, no pet.). In that situation, the reviewing court determines whether an instruction to disregard would not have cured the error. *Barnes*, 2013 WL 1748788, at *12; *Weeks Marine, Inc. v. Barrera*, No. 04-08-00681-CV, 2010 WL 307878, at *6 (Tex. App.—San Antonio Jan. 27, 2010, pet. denied) (mem. op.).

When a trial court instructs the jury to disregard evidence offered in violation of a motion in limine, the reviewing court may review the evidence to determine whether an instruction to disregard was adequate to cure its admission. *In re City of Houston*, 418 S.W.3d at 397 (citing *Dyer v. Cotton*, 333 S.W.3d 703, 715 (Tex. App.—Houston [1st Dist.] 2010, no pet.)). A new trial may be justified if the impact of the improper testimony was incurable by the trial court's instructions. *Id.* (citing *Dove v. Dir., State Emps. Workers' Comp. Div.*, 857 S.W.2d 577, 580 (Tex. App.—Houston [1st Dist.] 1993, writ denied)).

In *City of Houston*, the court of appeals found that the trial court abused its discretion by granting a motion for new trial for the plaintiffs for the violation of a limine order. *Id.* The plaintiffs sued the City after a police vehicle hit the plaintiffs' vehicle while responding to the report of a suspected drunk driver. *Id.* at 391. The jury found that the City bore 60 percent of the responsibility and the driver of the other vehicle bore the remaining responsibility. *Id.* The jury also found that the officer was performing a discretionary duty, in good faith, and within the scope of his authority, establishing one of the City's affirmative defenses and relieving it of liability. *Id.* The trial court granted the plaintiffs' motions for new trial—one of the grounds being violations of the motion in limine prohibiting any mention of the issuance of the citation to the driver. *Id.* at 391−92, 397. The officer, however, mentioned the citation in his testimony. *Id.* at 397. The trial court promptly sustained the objection by the driver's counsel, granted a motion to strike the testimony, and instructed the jury to disregard the testimony about the citation. *Id.*

28

On mandamus review of the new trial order, the court reviewed the evidence to determine whether the instruction to disregard was adequate to cure the admission of the prohibited evidence. *Id.* The court held that there was no reason to conclude that the instruction actually failed to cure the effect of the improper testimony. *Id.* The issuance of a citation was relevant only to the issue of who bore responsibility for causing the accident, and the jury found the City bore the greatest responsibility for the accident despite having heard that the plaintiff had received a citation. *Id.* Because the improper testimony had nothing to with the affirmative defense of "discretionary duty," on which the City prevailed, the testimony was ultimately harmless, even if it had not been disregarded by the jury. *Id.*

The court in *City of Houston* applied the standard for reviewing the violation of a motion in limine when an instruction to disregard was given. *See id.* ("When a trial court instructs the jury to disregard evidence offered in violation of a motion in limine, we may review that evidence to determine whether an instruction to disregard was adequate to cure its admission."). Here, the record shows that no instruction was given either at the time of the objection or in the jury charge; therefore, we consider the evidence to determine whether an instruction would have cured the violations. However, as addressed below, the admission of Cox's testimony in violation of the limine order was harmless, regardless of whether an instruction would or would not have cured the violations.

The collateral source rule is both a rule of evidence and damages. *Taylor v. Am. Fabritech, Inc.*, 132 S.W.3d 613, 626 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). The collateral source rule precludes any reduction in a tortfeasor's

liability because of benefits received by the plaintiff from someone else. *Haygood v. De Escabedo*, 356 S.W.3d 390, 394 (Tex. 2011). In other words, the defendant is not entitled to present evidence of, or obtain an offset for, funds received by the plaintiff from a collateral source. *Taylor*, 132 S.W.3d at 626. The jury's damages findings are not relevant in light of the jury's no-negligence finding as to Wyatt. Consequently, Wyatt's violation of the trial court' limine order could not have affected the jury's finding that Wyatt was not negligent, and any violation was harmless. *See City of Houston*, 418 S.W.3d at 397 ("[A] harmless error cannot constitute 'good cause' for granting a new trial."). We sustain Wyatt's third issue.

## VII. "IN THE INTEREST OF JUSTICE"

In its fourth issue, Wyatt contends that the trial court abused its discretion by granting the new trial "in the interest of justice." Wyatt raised this issue in its first petition for writ of mandamus, and we held that the trial court abused its discretion by including "in the interest of justice" as a ground for granting a new trial because it is no longer an independently sufficiently specific reason for granting a new trial. *Wyatt Field Serv. Co.*, 2013 WL 6506749, at *3 (citing *United Scaffolding*, 377 S.W.3d at 689−90; *Columbia*, 290 S.W.3d at 215). We reiterate our previous holding. Having held that the trial court's other three reasons for granting a new trial, i.e., the jury's findings that Wyatt was not negligent and ExxonMobil was negligent and the introduction of collateral source evidence tainted the jury's verdict, are not valid and correct reasons, the sole remaining basis for granting the new trial is "in the interest of justice." Again, because this is not an independently sufficiently specific reason for granting a new trial, the trial court abused its discretion by granting a new trial on this ground. *See United Scaffolding*, 377

30

S.W.3d at 689−90 (stating "in the interest of justice" is never an independently sufficient reason for granting a new trial); *Columbia,* 290 S.W.3d ("Broad statements such as 'in the interest of justice' are not sufficiently specific."). We sustain Wyatt's fourth issue.

## VIII. CONCLUSION

Having sustained all of Wyatt's issues, we conclude that the trial court abused its discretion by granting real parties' motion for new trial and Wyatt has no adequate remedy by appeal. Therefore, we conditionally grant Wyatt's petition for writ of mandamus and order the trial court to (1) vacate its March 4, 2013 order granting real parties' motion for new trial; and (2) render judgment on the jury's verdict. The writ will only issue if the trial court does not act in accordance with this opinion.

/s/    Martha Hill Jamison
        Justice

Panel consists of Justices Christopher, Jamison, and McCally. (McCally, J., dissenting).