**Opinion issued August 28, 2025**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-25-00158-CV

————————————

## IN RE HOTCHKISS DISPOSAL SERVICES, LTD., SHH MANAGEMENT LLC, AND GILBERT A. SALINAS, Relators

---

## Original Proceeding on Petition for Writ of Mandamus

---

## MEMORANDUM OPINION

This discovery mandamus arises in the wake of a 4:35 a.m. collision between a Toyota Camry and a Mack truck. The three relators–Hotchkiss Disposal Services, Ltd., SHH Management LLC, and Gilbert A. Salinas–filed a petition for a writ of mandamus challenging the trial court's February 17, 2025 order granting the "Motion for Discovery of Net Worth Evidence Pursuant to Texas Civil Practice and

Remedies Code § 41.0115" filed by real party in interest, Bernadette Oczkowski.[1]

The mandamus petition requested that the Court grant mandamus relief and direct the trial court to "vacate the February 17, 2025[] order granting Oczkowski's motion for net-worth discovery."

In connection with their mandamus petition, relators also filed an "Emergency Motion to Stay Trial Court's Order." In their motion, relators sought a stay of the trial court's February 17, 2025 order requiring them to produce the net-worth discovery by March 10, 2025. They argued that a stay of the requirement to produce the ordered net-worth discovery was necessary to preserve the status quo and protect their rights pending review of the merits of their mandamus petition. On March 7, 2025, the Court granted relators' motion, staying the obligation to produce net-worth discovery pending the Court's review of the petition for writ of mandamus.

The Court requested a response to the petition. Oczkowski filed a response to the petition, and relators filed a reply. We grant relief as to the employers and deny it as to the truck driver.

**Discussion**

In 2015, the Legislature modified Texas law relating to the discovery of a defendant's net worth in connection with a claim for exemplary damages. Under the

---

[1] The underlying case is *Bernadette Oczkowski v. Hotchkiss Disposal Services, Ltd., SHH Management, LLC, and Gilbert A. Salinas*, Cause No. 2021-43493, in the 80th District Court of Harris County, Texas, the Honorable Sonya L. Aston presiding.

statute as currently in effect, a claimant who seeks discovery of net worth must show a "substantial likelihood" of succeeding on the merits of the claim for exemplary damages:

> (a) On the motion of a party and after notice and a hearing, a trial court may authorize discovery of evidence of a defendant's net worth if the court finds in a written order that the claimant has demonstrated a substantial likelihood of success on the merits of a claim for exemplary damages. Evidence submitted by a party to the court in support of or in opposition to a motion made under this subsection may be in the form of an affidavit or a response to discovery.

TEX. CIV. PRAC. & REM. CODE ANN. § 41.0115(a).

In the underlying cause, the trial court made such a finding. It did so against all three defendants/relators, *i.e.*, the driver of the Mack truck (Gilbert Salinas) and two companies that allegedly employ him (HDS and SHH). Relators disputed the finding of a substantial likelihood of success on the exemplary damage claims.

### Standard for Mandamus Review

In the decade since enactment of section 41.0115, Texas appellate courts have addressed the statute in only a few mandamus decisions. All such cases begin from the normal legal propositions that govern mandamus review, namely that the relator must show an abuse of discretion and no adequate remedy by appeal:

> Mandamus is an extraordinary remedy that will issue only when (1) a trial court clearly abuses its discretion and (2) the relator lacks an adequate remedy by appeal. *In re Kappmeyer*, 668 S.W.3d 651, 654 (Tex. 2023) (orig. proceeding). "A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to

3

constitute a clear and prejudicial error of law." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). A trial court has no discretion in determining what the law is or in applying the law to the facts. *Id*. at 840. Thus, a trial court's clear failure to analyze or apply the law correctly will constitute an abuse of discretion. *Id*.

Mandamus relief is available when a trial court compels production beyond the permissible bounds of discovery. *In re Weekley Homes, L.P*., 295 S.W.3d 309, 322 (Tex. 2009) (orig. proceeding). The scope of discovery that a trial court allows is reviewed for an abuse of discretion. *In re CSX Corp*., 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding). When a trial court compels discovery beyond the permissible bounds prescribed by law, there is not an adequate remedy by appeal if the appellate court would be unable to cure the trial court's error. *Walker*, 827 S.W.2d at 843.

*In re Kittle*, No. 01-24-00462-CV, 2024 WL 3446947, at *2 (Tex. App.—Houston [1st Dist.] July 18, 2024, orig. proceeding) (mem. op.); *see also In re Boone*, 629 S.W.3d 372, 373-74 (Tex. App.—San Antonio 2020, orig. proceeding) (granting mandamus relief under section 41.0115); *In re Bella Corp*., 648 S.W.3d 373, 377 (Tex. App.—Tyler 2021, orig. proceeding) (similar).

The statute contemplates appellate review (though not immediate appeal), and limits what evidence the "reviewing" court may consider: "When reviewing an order authorizing or denying discovery of net worth evidence under this section, the reviewing court may consider only the evidence submitted by the parties to the trial court in support of or in opposition to the motion described by Subsection (a)." TEX. CIV. PRAC. & REM. CODE ANN. § 41.0115(c).

The statute does not expressly provide the deference the reviewing court must afford the trial court's ruling, but that question can have only one answer because it arises in a mandamus setting. The abuse of discretion standard governs "all" mandamus proceedings, even when a "merits" question may lurk somewhere below the surface:

> Importantly, this Court has never suggested merits review of new-trial orders should be conducted under anything other than the abuse-of-discretion standard that is familiar and inherent to mandamus proceedings. . . . Accordingly, it is inaccurate to say, as one court of appeals has suggested, that we have "enunciated a new standard of review for intermediate appellate courts to use in implementing [our] directive: the 'merits-based review.'" *In re Wyatt Field Serv. Co.*, 454 S.W.3d 145, 150 (Tex. App.–Houston [14th Dist.] 2014, mand. filed) (orig. proceeding). "Merits review" was simply a reference to the new authority granted to courts of appeals to consider, in mandamus proceedings, whether the record supports the trial court's rationale for ordering a new trial. *See [In re] Toyota [Motor Sales, U.S.A., Inc.]*, 407 S.W.3d [746,] 749 [(Tex. 2013)]. It is not a new standard of review; the abuse-of-discretion standard applies to merits review just as it does in all mandamus proceedings.

*In re Bent*, 487 S.W.3d 170, 177–78 (Tex. 2016).

## Analysis

Oczkowski has asserted exemplary damage claims against all three relators, so we will take each in turn. As her basis for exemplary damages, Oczkowski alleges gross negligence. The standards for gross negligence, set forth in Civil Practice and Remedies Code Chapter 41, are familiar: "Gross negligence consists of both objective and subjective elements." *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118,

137 (Tex. 2012). Both elements must be met for a finding of gross negligence to be proper. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11). Gross negligence may be proven by direct or circumstantial evidence. *Bella*, 648 S.W.3d at 385. But to prevail on the merits, the claimant must prove it by clear and convincing evidence. TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(b). Corporate employers can be held liable for gross negligence in a proper case, but some special rules apply so that they are not automatically liable in punitive damages for all wrongdoing of their employees. *See Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997); *Waste Mgmt. of Tex., Inc. v. Dodd*, No. 02-23-00043-CV, 2025 WL 285333, at *4 (Tex. App.—Fort Worth Jan. 23, 2025, pet. filed) (mem. op.).

## A. The Truck Driver Gilbert Salinas.

In finding a substantial likelihood of success on the exemplary damages claim against Salinas, the trial court had evidence of a large and heavy Mack truck abruptly turning right from a left lane–without any warning and without using a turn signal–straight into a Camry that had its lights on at 4:35 in the morning. Corroborating evidence came from a passenger in the truck's front seat.

In deposition testimony, the passenger testified that he saw the Camry behind them and saw when the Camry changed lanes to the right by moving to the outside lane. The passenger stated that he "did see [the Camry] back there." He further stated that he "was sitting observing [Salinas] and observing the vehicle that was

6

behind [them]." The passenger then testified that, "all of a sudden when [Salinas] was making a [right] turn, all of a sudden [the passenger saw] a vehicle shooting up the side of the truck." This vehicle was the Camry, driven by Oczkowski, which began "on one side," but then Oczkowski changed lanes according to the passenger, perhaps because "she didn't know what [Salinas] was going to do." The passenger testified that by the time Oczkowski "finally figured out [Salinas] was making the [right] turn [from the left lane] . . . it was just too late."

Salinas testified that he "didn't see no headlights." But the passenger testified that this denial left him "a little puzzled." He testified that if he saw the Camry "from the passenger's side," Salinas must have seen the Camry. "But when [Salinas was] riding up the middle lane to make that turn, I think that's what kind of like threw [Oczkowski] off because she didn't know what [Salinas] was going to do." The passenger testified that he believed Salinas "made a turn too quick before he looked through the window." He did not recall Salinas having his right turn blinker on at the time of the turn. The passenger further testified that he "could see [Oczkowski] from the passenger mirror," but he did not "know if [Salinas] even noticed the [Camry] back there."

The crash report largely agreed with the passenger about what had happened, namely the Mack truck hit the Camry when trying to turn right from the left lane:

"Unit #1 [the Mack truck] attempted to turn right into the parking lot from the wrong lane and struck Unit #2 [the Camry]."

The trial court thus could have permissibly considered the combined effect of all these facts:

- The Mack truck was a large vehicle capable of causing serious harm to a smaller vehicle;

- The Camry, a smaller vehicle, had its headlights on during the nighttime darkness of 4:35 a.m. and was visible from the truck's cab;

- The Mack truck traveled in the inside (left) lane but then abruptly turned "too quick" to the right, thereby making a turn from the wrong lane; and

- The truck driver neither kept a proper lookout nor used his blinker.

Given these facts, and given all the other evidence in the record, the trial court did not abuse its discretion in finding a substantial likelihood that Oczkowski will succeed on her exemplary damage claim against Salinas.

To be clear, the evidence before us almost certainly differs from the evidence that will come in at a trial. Sufficiency review of a jury verdict may occur at a later time, on a different record, which will almost certainly be a record much richer in detail. This opinion does not express a view one way or the other about any future debate over a future factual record. Instead, we hold only that the trial court acted within its discretion in finding a substantial likelihood of success as to the truck driver, based on the evidence currently before the court. Accordingly, we deny the mandamus relief requested by Salinas.

**B.     The Truck Driver's Employers HDS and SHH.**

The situation differs as to the employers.  The employers did not make a sudden right turn from a left lane; they did not fail to use a blinker; they did not fail to keep a proper lookout on a dark night.  The facts of the wreck plainly implicate the truck driver and his conduct.  An exemplary damage recovery against him is not out of the question, but faulting the employers is another matter altogether.

At the outset, we note that the parties have not done much to distinguish between HDS and SHH.  For example, in their mandamus petition, relators stated that Oczkowski asserted claims against both HDS and SHH "on the theory that, because HDS contracted SHH to perform its work, Texas regulations make HDS liable as a co-employer of Salinas."  Further, the same person, Ronald Hotchkiss, apparently serves as the relevant managerial actor in both HDS and SHH.  Finally, in her response to the mandamus petition, Oczkowski stated that Salinas "was hired as an employee by SHH but contract[ed] to perform work" for HDS and is thus legally deemed an employee of both.  Accordingly, for purposes of this mandamus proceeding, we will follow the lead from the parties and treat these two defendants as similarly situated.

Oczkowski builds her legal argument on a 1983 decision by our sister court.  *See N. Houston Pole Line Corp. v. McAlister*, 667 S.W.2d 829 (Tex. App.—Houston [14th Dist.] 1983, no writ).  We acknowledge the 1983 decision in *McAlister*, but

the law of gross negligence has gone through great upheaval since then, and what once would have passed muster no longer does. The reforms found in Chapter 41 make *McAlister* immaterial to evaluating substantial likelihood of success on the merits. The Legislature has added a series of restrictions to the law of punitive damages since 1983.

Oczkowski's evidence against the employers largely reduces to two categories: Salinas's failure to wear corrective lenses at the time he hit the Camry, and his driving record or employment record from four years or more in the past.

As for the corrective lenses, there is conflicting evidence about whether Salinas was wearing them at the time of the wreck. The trial court could have concluded that he was not wearing them, and it is undisputed that he should have been. However, the record does not tell us anything beyond that fact. Did he need correction in one eye or two? How good is his uncorrected vision? Nothing in the record says either way.

Nothing in the record provides a basis for concluding that correction would have made any difference here. For example, wearing corrective lenses would not make Salinas any more likely to use his blinker or any less likely to change lanes suddenly. While a full trial on the merits will provide further guidance as to these issues, these unanswered questions furnish no basis for speculating with respect to this mandamus proceeding.

In this vein, Oczkowski points to a noteworthy exchange during the deposition of Ronald Hotchkiss. The questioner asked Hotchkiss, "Were you aware that Mr. Salinas did not have on – or was not using any corrective lenses at the time of the accident?" Hotchkiss answered "Yes." However, there were no follow up questions to further develop this argument. It is therefore unclear whether Hotchkiss became aware of this fact before or after the accident. Nor did anyone ask Hotchkiss questions regarding his knowledge of Salinas's vision or the necessity of corrective lenses for specific activities, such as driving in low-light conditions. In short, the record does not furnish a basis on which the trial court could have permissibly found a substantial likelihood of success on the merits of the exemplary damage claim on this argument.

As for Salinas's driving record, Oczkowski points to a number of transgressions, primarily traffic citations. The collision took place on July 8, 2021. Salinas had no traffic tickets in 2021, 2020, 2019, or 2018. Based on the mandamus record, Salinas's most recent traffic citation was in June 2017 for running a red light. Although Oczkowski cites other traffic citations from earlier years, all but one involve violations that differ in kind from the abrupt lane change that took place here. The one exception came in 2015, when Salinas received a ticket for changing lanes without a signal. Oczkowski's expert lumps all these incidents together as "known moving violations." Those may go into the overall factual mix for proving

11

gross negligence at trial, but they do not provide a basis that would allow the court to make a pretrial finding of substantial likelihood of success.

Oczkowski also complains about hiring and training, arguing that the employers failed to properly screen in the hiring process and further to provide sufficient training. For example, her expert contends that the driver should not have been hired in 2012. Oczkowski also states: "the only training [Salinas] received between the inception of employment in 2012 through the day of the accident that occurred on July 8, 2021, occurred over two weeks only, between December 11–25, 2012." "Yet," Oczkowski argued, "the Motor Carrier Safety Regulations require training."

None of this, however, bears a connection to a driver making an abrupt right turn, from the left lane, without a turn signal in the middle of the night nearly a decade later. Oczkowski offers no evidence that specialized training would have filled some kind of knowledge gap about how and when to change lanes or how and when to use a blinker. Avoiding abrupt lane changes without a blinker on is not an advanced skill taught only to commercial truck drivers. It is taught to every teenager who gets a license.

After reviewing all the evidence, we conclude that the trial court abused its discretion in finding a substantial likelihood of success on the merits of the exemplary damage claims against the employers. We again note that this opinion

does not reach any conclusion regarding whether Oczkowski may present legally or factually sufficient evidence of gross negligence by the employers at trial. Those merits questions are not before us. We hold only that the evidence at this stage is not such that the trial court could permissibly find a substantial likelihood of success on the merits of a gross negligence exemplary damage claim against the employers. Mandamus relief will lie as to the two employers.[2]

---

[2]  *See In re Kimco Devs., Inc.*, No. 14-24-00361-CV, 2024 WL 5250445, at \*5 (Tex. App.—Houston [14th Dist.] Dec. 31, 2024, orig. proceeding) (mem. op.) ("[B]ecause real party in interest, Cypress, failed to demonstrate a substantial likelihood of success on the merits of its breach of fiduciary duty claim for exemplary damages . . . the trial court abused its discretion in granting real party in interest's motion to compel net worth discovery . . . ."); *In re Juniper Ventures of Tex., LLC*, 679 S.W.3d 177, 182 (Tex. App.—San Antonio 2023, orig. proceeding) ("Having determined Delgadillo did not present any evidence to support a finding of substantial likelihood of success on the merits of an exemplary damages claim, we conclude the trial court abused its discretion by granting her motion to compel discovery as to JVT's net worth"); *In re Bella Corp.*, 648 S.W.3d 373, 386 (Tex. App.—Tyler 2021, orig. proceeding) ("Respondent could not reasonably find that the RPIs demonstrated a substantial likelihood of success on the merits of a claim for exemplary damages based on gross negligence").

We therefore deny mandamus relief as to the truck driver Gilbert Salinas, but we grant relief as to Hotchkiss Disposal Services, Ltd. and SHH Management LLC. We are confident that the trial court will comply with our ruling and withdraw its order relating to Hotchkiss Disposal Services and SHH Management.  The writ will issue only if it does not.  We further lift the stay imposed by our March 7, 2025 order and dismiss any pending motions as moot.

David Gunn
Justice

Panel consists of Justices Guerra, Gunn, and Dokupil.