**Petition for Writ of Mandamus Conditionally Granted and Opinion filed March 28, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-01016-CV

---

### IN RE CHRISTIAN CAMBELL, Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**122nd District Court**
**Galveston County, Texas**
**Trial Court Cause No. 15CV0092**

---

## O P I N I O N

In this original proceeding, relator Christian Cambell, seeks a writ of mandamus ordering the respondent, the Honorable John Ellisor, to vacate his order granting a new trial. We conditionally grant the writ.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying case arises from a vehicle-bicycle accident. The cyclist, plaintiff/real party-in-interest John Colwell, was riding his bicycle eastbound on Seawall Boulevard in Galveston. He crossed into the intersection at 31st Street, and

the vehicle driven by defendant/relator Christian Cambell collided with the cyclist and his bicycle.

The cyclist sued the driver. In the jury trial that followed, the trial court issued a charge, asking the jury in Question 1 if the negligence, if any, of the driver or the cyclist proximately caused the occurrence. After having certain testimony about the accident read back to them, the jury answered "Yes" as to both the driver and the cyclist. In response to Question 2, predicated on two "yes" responses for Question 1, the jury assigned a percentage of responsibility to the driver and cyclist, finding the driver 17% responsible and the cyclist 83% responsible.

The cyclist filed a motion for judgment notwithstanding the verdict ("JNOV"), in which he discussed the evidence and contended there was no evidence to support the jury's answer to Question 1 that he was negligent. Like the cyclist, in responding, the driver detailed the evidence. The driver also noted the trial court must have believed there was some evidence of the cyclist's negligence because the trial court submitted that issue to the jury.

The trial court held a hearing on the JNOV motion. At the hearing, both parties discussed the evidence in detail, just as they had done in the briefing. The driver also pointed out the jury deliberated for six hours. The trial court said it would take the matter under advisement. The record does not contain a written ruling on the JNOV motion; rather, the trial court implicitly denied the motion by signing a judgment on the verdict.

The cyclist filed a motion for new trial. Unlike his detailed JNOV motion, the motion for new trial was skeletal, stating in its entirety: "The jury's verdict as to contributory negligence and as to comparative responsibility are against the great weight and preponderance of the evidence. Accordingly, Plaintiff moves the Court to grant a new trial." Construed broadly, the motion challenges the factual

2

sufficiency of the evidence to support the answers to both Question 1 ("contributory negligence") and Question 2 ("comparative responsibility"). The driver responded by incorporating his JNOV response. It appears the trial court held no hearing on the motion for new trial.

The trial court signed an order granting the cyclist's motion for new trial, stating in relevant part:

> . . . [T]he Court, having considered the following uncontroverted facts adduced at trial [sic]:
>
> 1. Defendant [the driver] was stopped at the stop sign at the intersection of 31st St. and Seawall Blvd. just prior to the collision and saw Plaintiff [the cyclist] on his bicycle on the sidewalk approaching the crosswalk from Defendant's right;
>
> 2. The Defendant then looked to his left and then proceeded through the crosswalk onto Seawall Blvd., striking the Plaintiff who was directly in front of Defendant in or near the middle of the crosswalk; and
>
> 3. There was a lack of evidence of careless or otherwise improper conduct on the part of the Plaintiff as he approached and entered the crosswalk.
>
> It is the considered opinion of the Court that the combination of these facts and lack of evidence undermines the jury's finding of 83% comparative responsibility on the Plaintiff and 17% on the Defendant, making the finding against the great weight and preponderance of the evidence and requiring the granting of a new trial. . .

In numbered statements 1 and 2 the trial court summarizes certain evidence. Numbered statement 3 concerns the plaintiff/cyclist's negligence (or lack thereof), and therefore refers to the jury's answer to Question 1 that the plaintiff/cyclist's negligence proximately caused the occurrence. The unnumbered statements in the final paragraph concern the division of responsibility, and therefore refer to the jury's answer to Question 2 that the defendant/driver was 17% responsible and the

3

plaintiff/cyclist was 83% responsible.

## II. PETITION FOR MANDAMUS AND RESPONSE

In his petition for writ of mandamus, the driver contends the trial court abused its discretion in signing the new-trial order because the jury's findings of 83% responsibility for the cyclist and 17% responsibility for the driver do not go against the great weight and preponderance of the evidence. He asserts the trial court in its order incorrectly adopts the cyclist's view of the evidence as "uncontroverted facts." At this court's request, the cyclist responded to the driver's petition for mandamus relief.

## III. MANDAMUS STANDARD

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that the relator lacks an adequate remedy at law, such as an appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). "In determining whether the trial court abused its discretion with respect to resolution of factual matters, we may not substitute our judgment for that of the trial court and may not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable." *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (orig. proceeding) (per curiam). In other words, under an abuse-of-discretion standard, we defer to the trial court's factual determinations if the evidence supports them, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

# IV. ANALYSIS

## A. Mandamus Review of Orders Granting New Trials

### 1. Supreme Court of Texas Cases

Texas trial courts historically have enjoyed broad discretion in granting new trials. *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 210 (Tex. 2009) (orig. proceeding). But that discretion comes with limits. *See id.* In the last decade, the Supreme Court of Texas has sought to protect the right to trial by jury under the Texas Constitution by imposing certain required elements for an order granting a new trial to be facially valid. *See In re Bent*, 487 S.W.3d 170, 172–73, 175 (Tex. 2016) (orig. proceeding); *In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 757–58 (Tex. 2013) (orig. proceeding); *In re United Scaffolding, Inc.*, 377 S.W.3d 685, 688–89 (Tex. 2012) (orig. proceeding); *In re Columbia Medical Ctr.*, 290 S.W.3d at 213 (Tex. 2009). Under these cases, a trial court granting a motion for new trial must provide an understandable, reasonably specific explanation of the trial court's reasons for setting aside the jury's verdict. *See In re Bent*, 487 S.W.3d at 173; *In re Columbia Med. Ctr.*, 290 S.W.3d at 213. A trial court granting a motion for new trial should state one or more reasons for the ruling and those reasons must be both legally appropriate and sufficiently specific to show the trial court did not simply parrot a pro forma template, but rather derived the articulated reasons from the particular facts and circumstances of the case at hand. *See In re Bent*, 487 S.W.3d at 173; *United Scaffolding*, 377 S.W.3d at 688–89.

The high court has concluded that an order granting a new trial need not detail the evidence relevant to the factual-insufficiency point, as courts of appeals must do under *Pool v. Ford Motor Company*. *See In re Bent*, 487 S.W.3d at 176; *In re United Scaffolding*, 377 S.W.3d at 687; *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986). Instead, a trial court should provide a "cogent and reasonably specific

explanation" of the court's reasoning. *In re Bent*, 487 S.W.3d at 176; *In re United Scaffolding*, 377 S.W.3d at 688. The supreme court has counseled reviewing courts to focus "not on the length or detail of the reasons a trial court gives, but on how well those reasons serve the general purpose of assuring the parties that the jury's decision was set aside only after careful thought and for valid reasons." *In re United Scaffolding*, 377 S.W.3d at 688; *see In re Bent*, 487 S.W.3d at 176. Yet, in urging quality over quantity of reasons, the high court has not relieved any trial court of its responsibility to point to evidence that played a pivotal role in its decision. *See In re Bent*, 487 S.W.3d at 176. The supreme court has noted that "mere recitation of a legal standard, such as a statement that a finding is against the great weight and preponderance of the evidence, will not suffice." *In re United Scaffolding*, 377 S.W.3d at 689; *see In re Bent*, 487 S.W.3d at 176. To be facially valid, an order granting a new trial based on factual insufficiency "must indicate that the trial judge considered the specific facts and circumstances of the case at hand and explain how the evidence (or lack of evidence) undermines the jury's findings." *In re United Scaffolding*, 377 S.W.3d at 689; *see In re Bent*, 487 S.W.3d at 176.

Even if a new-trial order satisfies the facial-validity requirements, the supreme court has empowered courts of appeals "to 'conduct a merits review of the bases for a new trial order' and grant mandamus relief '[i]f the record does not support the trial court's rationale for ordering a new trial.'" *In re Bent*, 487 S.W.3d at 173 (quoting *In re Toyota Motor Sales, U.S.A.*, 407 S.W.3d at 749). The high court has not yet addressed how appellate courts should apply this merits review to an order granting a new trial based on factual insufficiency. *See In re Bent*, 487 S.W.3d at 177–78; *In re Toyota Motor Sales, U.S.A.*, 407 S.W.3d at 757–58. The *Bent* court did not address this issue because the high court concluded that the new-trial order was not facially valid. *See In re Bent*, 487 S.W.3d at 173 (stating "[w]e ultimately do not reach that issue [the amount of deference a court of appeals should give to a

trial court's decision that the trial evidence is factually insufficient] because we conclude the bases for the trial court's order . . . did not comply with the facial requirements"). Nonetheless, the high court observed that the *Toyota* merits review did not create a new standard of review, as this court suggested in *In re Wyatt Field Service Company*; instead, the *Bent* court stated that the abuse-of-discretion standard applies to the *Toyota* merits review, as it does in all mandamus proceedings. *See In re Bent*, 487 S.W.3d at 177; *In re Wyatt Field Service Co.*, 454 S.W.3d 145, 150 (Tex. App.—Houston [14th Dist.] 2014 [mand. dism'd], orig. proceeding). The *Bent* court also noted that Texas courts of appeals have legal authorities that they may consider in conducting merits review of a new-trial order based on factual insufficiency, including opinions from the United States Court of Appeals for the Fifth Circuit. *See In re Bent*, 487 S.W.3d at 177. Yet, in the same opinion the supreme court stated that it has not adopted the Fifth Circuit's approach to reviewing the merits of new-trial orders, and that the high court did not suggest that more could not be said on the subject. *See id*.

## 2.    This Court's Precedent

Twice in recent years the Fourteenth Court of Appeals has addressed the issue the high court did not address in *In re Bent*: how to apply *Toyota*'s merits review to an order granting a new trial based on the factual insufficiency of the evidence. *See In re Athans*, 478 S.W.3d 128, 133–34 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding); *In re Wyatt Field Serv. Co.*, 454 S.W.3d at 152–53. In these cases, this court applied the well-established standard for determining challenges to the factual sufficiency of the evidence, without any deference to the trial court's ruling on the complaint. *See In re Athans*, 478 S.W.3d at 133–34; *In re Wyatt Field Serv. Co.*, 454 S.W.3d at 152–53. The parties have not cited and research has not revealed (1) an on-point decision from the supreme court or this court sitting en banc that is

contrary to this holding in *In re Athans* or in *In re Wyatt Field Service Company* or (2) a material change in relevant statutes since this court issued those decisions. Therefore, we stand bound by each of these holdings. *See Glassman v. Goodfriend*, 347 S.W.3d 772, 781 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc) (noting that under principles of horizontal stare decisis, a panel of this court is bound by a prior holding of another panel of this court absent a decision from a higher court or this court sitting en banc that is on point and contrary to the prior panel holding or an intervening and material change in the statutory law).

Under this court's precedent, we do not defer to the trial court's ruling as to whether the trial evidence is factually sufficient to support a jury's finding, regardless of whether the trial court concluded the evidence was factually insufficient or factually sufficient. *See In re Athans*, 478 S.W.3d at 133–34; *In re Wyatt Field Serv. Co.*, 454 S.W.3d at 152–53; *Le v. Nguyen*, No. 14-11-00910-CV, 2012 WL 5266388, at *8, *9–10 (Tex. App.—Houston [14th Dist.] Oct. 25, 2012, no pet.)(mem. op.). To preserve error on a complaint that the trial evidence is factually insufficient to support a jury finding, a party must get an adverse ruling on a motion for new trial containing this complaint. *See* Tex. R. Civ. P. 324(b)(2),(3); *Cecil v. Smith*, 804 S.W.2d 509, 510 (Tex. 1991); *Halim v. Ramchandani,* 203 S.W.3d 482, 487 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Thus, whenever a court of appeals reviews an appellant's contention that the trial evidence is factually insufficient to support a jury finding, the court of appeals is reviewing the trial court's denial of a motion for new trial asserting the factual-insufficiency complaint. *See* Tex. R. Civ. P. 324(b)(2); *Cecil*, 804 S.W.2d at 510. Courts of appeals review the denial of a motion for new trial under an abuse-of-discretion standard. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010); *Le*, 2012 WL 5266388, at *10. Nonetheless, in reviewing the denial of a motion for new

8

trial asserting a factual-insufficiency complaint, courts of appeals do not defer to the trial court's determination that the evidence is factually sufficient; instead, courts of appeals apply the same factual-sufficiency standard that the trial court applied. *See Windrum v. Kareh*, —S.W.3d—,—, 2019 WL 321925 at *12–13 (Tex. Jan. 25, 2019); *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761–62 (Tex. 2003); *Le*, 2012 WL 5266388, at *8, *9–10; *Hicks v. Ricardo*, 834 S.W.2d 587, 590 (Tex. App.—Houston [1st Dist.] 1992, no writ). One explanation for this approach is that the trial court's failure to correctly determine whether the trial evidence is factually sufficient to support a jury finding is a clear failure to apply the law correctly to the facts, which constitutes an abuse of discretion. *See In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d at 382 (noting that a trial court clearly abuses its discretion if it clearly fails to apply the law correctly to the facts); *Le*, 2012 WL 5266388, at *8, *9–10 (concluding that the trial court did not abuse its discretion by concluding that the trial evidence was factually sufficient because the jury finding was not so contrary to the overwhelming weight of evidence as to be clearly wrong and unjust and noting that a trial court abuses its discretion if it clearly fails to correctly apply the law); *Bogart v. Star Bldg. Sys.*, No. 01-10-00446-CV, 2011 WL 846566, at *2 n.3 (Tex. App.—Houston [1st Dist.] Mar. 10, 2011, pet. denied) (concluding that appellants failed to properly brief factual-insufficiency challenge in part because appellants did not discuss how the law regarding factual sufficiency applied to the facts of the case).

### 3. Federal Court Cases

In determining whether a federal district court abused its discretion in granting a motion for new trial because the trial evidence is factually insufficient to support a jury finding, a federal court of appeals gives some deference to the district court's determination. *See Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930–31 (5th Cir.

9

1982).  Significantly, a federal court of appeals also gives deference to the district court's ruling when determining whether the district court abused its discretion in denying a motion for new trial in which the movant asserted that the evidence was factually insufficient to support a jury finding.  *See Thomas v. Tex. Dep't of Crim. Justice*, 297 F.3d 361, 368 (5th Cir. 2002).  In contrast, Texas courts of appeals give no deference to the trial court's ruling when they determine whether the trial court abused its discretion in denying a motion for new trial based on an assertion that the trial evidence is factually insufficient to support a jury finding.  *See Windrum*, — S.W.3d at —, 2019 WL 321925 at *12–13; *Golden Eagle Archery, Inc.*, 116 S.W.3d at 761–62; *Le*, 2012 WL 5266388, at *8, *9–10; *Hicks*, 834 S.W.2d at 590.  Thus, while federal cases provide analysis and legal rules for consideration in this area, the federal context differs materially from the state context.

Under binding precedent from the Supreme Court of Texas, Texas courts of appeals must give no deference to the trial court's ruling when determining whether the trial court abused its discretion in denying a new trial raising a factual-insufficiency point.  *See Windrum*, —S.W.3d at —, 2019 WL 321925 at *12–13; *Golden Eagle Archery, Inc.*, 116 S.W.3d at 761–62.  If this court were to give deference to the trial court's ruling when determining whether the trial court abused its discretion in granting a new trial based on the factual insufficiency of the evidence to support a jury finding, this deference would be inconsistent with the supreme court's precedent requiring no deference when the trial court denies a new trial based on assertions of factual insufficiency.  Because this court must give no deference to a trial court's determination that the trial evidence is factually sufficient to support a jury finding, principles of consistency and the need to protect the right to trial by jury under the Texas Constitution support this court's holdings that we also give no deference to the trial court when the trial court concludes that the evidence is

factually insufficient. *See Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 362–63 (5th Cir. 1980); *In re Wagner*, 560 S.W.3d 309, 319 (Tex. App.—Houston [1st Dist.] 2017 [mand. denied], orig. proceeding); *In re Zimmer, Inc.*, 451 S.W.3d 893, 905 (Tex. App.—Dallas 2014, orig. proceeding). Thus, this court's binding precedent makes sense in the context of existing precedent from the Supreme Court of Texas.

### 4. Precedent from Other Texas Courts of Appeals

This court's precedent also aligns with mandamus decisions from seven sister courts that have not deferred to the trial court's ruling when determining whether the trial court abused its discretion in granting a new trial based on a conclusion that the trial evidence is factually insufficient to support a jury finding. *See In re Wagner*, 560 S.W.3d 309, 319 (Tex. App.—Houston [1st Dist.] 2017 [mand. denied], orig. proceeding); *In re Orren*, 533 S.W.3d 926, 931 (Tex. App.—Tyler 2017, orig. proceeding); *In re Ybarra*, No. 14-17-00245-CV, 2017 WL 4655347, at *3 (Tex. App.—San Antonio Oct. 18, 2017, orig. proceeding) (mem. op.); *In re BCH Dev., LLC*, 525 S.W.3d 920, 925 (Tex. App.—Dallas 2017, orig. proceeding); *In re State Farm Mut. Auto. Ins. Co.*, 483 S.W.3d 249, 262 (Tex. App.—Fort Worth 2016, orig. proceeding); *In re E.I. DuPont de Nemours & Co.*, 463 S.W.3d 80, 84–85 (Tex. App.—Beaumont 2015, orig. proceeding); *In re Baker*, 420 S.W.3d 397, 402–03 (Tex. App.—Texarkana 2014, orig. proceeding); *but see In re Peterson Construction, Inc.*, No. 13-15-00535-CV, 2016 WL 3548643, at *5–6, *13–15 (Tex. App.—Corpus Christi Jun. 17, 2016 [mand. denied], orig. proceeding).

### 5. The Factual Sufficiency Standard of Review

Under this court's precedent, to determine if the trial court abused its discretion in concluding the trial evidence is factually insufficient to support the jury's findings in response to Questions 1 and 2, we apply the well-established

11

standard for assessing challenges to the factual sufficiency of the evidence, without any deference to the trial court's ruling. *See In re Athans*, 478 S.W.3d at 133–34; *In re Wyatt Field Serv. Co.*, 454 S.W.3d at 152–53.

In a factual-sufficiency review, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). After considering and weighing all the evidence, the evidence is factually insufficient to support the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* The jury stands as the sole judge of the credibility of the witnesses and the weight to be given to witness testimony. *Golden Eagle Archery, Inc.*, 116 S.W.3d at 761. Neither the trial court nor this court may substitute its own judgment for that of the jury, even if the court would reach a different answer on the evidence. *See United Scaffolding*, 377 S.W.3d at 688; *Maritime Overseas*, 971 S.W.2d at 407. The amount of evidence necessary to show that factually sufficient evidence supports a jury finding is far less than the amount of evidence necessary to justify a conclusion that the finding is so contrary to the overwhelming weight of the evidence so as to be clearly wrong and unjust. *See Athans*, 478 S.W.3d at 134.

## B.     The Trial Court's Ruling

In today's mandamus petition the driver raises only a *Toyota* challenge: he contends only that the record does not support the stated reasons in the new-trial order. Accordingly, we conduct a merits review to determine if the record supports the trial court's granting of a new trial on the bases that the trial evidence is factually insufficient to support the jury's findings in response to Questions 1 and 2.[1] *See In*

---

[1] The driver does not assert that the trial court's new-trial order fails to satisfy the requirements for facial validity, so we do not address this issue.

*re Athans*, 478 S.W.3d at 133–34, 138; *In re Wyatt Field Serv. Co.*, 454 S.W.3d at 152–53. If the record does not support these bases under the above-stated legal standard, then the trial court abused its discretion in granting a new trial. *See In re Athans*, 478 S.W.3d at 133–34, 138; *In re Wyatt Field Serv. Co.*, 454 S.W.3d at 152–53.

### 1. Summary of Evidence regarding the Collision

The evidence at trial concerned two main topics: the collision and the cyclist's damages. Other than three photos of the intersection or of Seawall Boulevard, all the evidence about the collision comes from the testimony of the driver and the cyclist, summarized as follows:

*Driver's Testimony*

1. The driver drove an SUV south on 31st Street until he reached the intersection at Seawall Boulevard.

2. The driver was familiar with the area.

3. The driver stopped at the stop sign at the intersection.

4. The driver saw a pedestrian, an older woman, crossing 31st from his left (east).

5. When the pedestrian was about a quarter of the way across the street, the driver looked to his right (west) and saw the cyclist riding towards the intersection.

6. After the pedestrian crossed, the driver "creeped up a little bit" to see around the cars parked on Seawall.

7. The driver looked to his left. At trial, he first testified he did not look to his right again after looking to his left. He then testified the opposite: he said he looked to his right for a second time, did not see the cyclist, and looked to his left again.

8. The driver went forward and the SUV collided with the cyclist.

13

*Cyclist's Testimony*

1. The cyclist knew the rules of the road for riding a bicycle. The cyclist knew that when he was riding a bicycle right next to the road, he had to follow the same rules as any other vehicle.

2. Before the accident, the cyclist traveled approximately 4,000 miles a year on his bicycle on the shoulder of the road. The cyclist rode his bicycle on the right side of the shoulder because that is part of the rules of the road.

3. On the day of the accident the cyclist was riding his bicycle eastbound on Seawall Boulevard on the left-hand (north) side, alternating between the left-hand (north) sidewalk and the left-hand (north) "parking lane," going in the direction opposite from the direction of the closest traffic on Seawall Boulevard.

4. The cyclist rode on the left-hand (north) sidewalk from a department store to 30th Street, at which point the cyclist moved into Seawall's left-hand (north) parking lane because there was a "four-wheel bicycle" in his path. Just before the accident, the cyclist moved back onto the left-hand (north) sidewalk.

5. The cyclist saw the SUV [driver's vehicle] at a "dead stop" at 31st Street from 20 to 30 yards west.

6. When the cyclist saw the SUV, he stopped pedaling and put his hands on the brake levers of the bicycle in case he needed to use them.

7. The cyclist could see a female passenger in the SUV, and he and the passenger made eye contact.

8. The cyclist could not see the driver due to the sun's glare on the windshield.

9. The SUV "was at a dead stop" and "just sat there." The cyclist assumed the driver saw him and was allowing him to cross in front of the SUV.

10. The cyclist started to cross in front of the SUV.

11. The cyclist heard the SUV's engine "rev up," then felt the SUV hit him.

## 2. Factual Sufficiency of the Evidence to Support the Jury's Findings.

The new-trial order cites to only two facts about the cyclist: (1) "just prior to

14

the collision," the cyclist was "on his bicycle on the sidewalk approaching the crosswalk from the [driver's] right" and (2) when the driver struck the cyclist, the cyclist "was directly in front of Defendant in or near the middle of the crosswalk." Those facts are said to support the trial court's conclusion that the record contains no evidence the cyclist was negligent and the jury's apportionment of responsibility at 83% for the cyclist and 17% for the driver goes against the great weight and preponderance of the evidence.

### a. The record does not support the trial court's conclusion that "there was a lack of evidence" of the cyclist's negligence.

The new-trial order states, "There was a lack of evidence of careless or otherwise improper conduct on the part of the Plaintiff as he approached and entered the crosswalk." "Lack of evidence" means no evidence or legally insufficient evidence, which normally serves as the basis for a trial court to direct a verdict, disregard a jury answer, or render judgment notwithstanding the verdict.[2]  *See Windrum*, —S.W.3d at —, 2019 WL 321925 at *12–13.  The term "careless or otherwise improper conduct" is not equivalent to "negligence."[3]  Nonetheless, we presume for the purposes of our analysis that the trial court determined in the new-

---

[2] *Bent* also involved the conflation of legal-insufficiency and factual-insufficiency points in a new-trial order. The case arose from an insurance-coverage dispute following Hurricane Ike. The jury found the insurer had not breached the policy. The trial court stated the finding was "so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust." 487 S.W.3d at 178. In other words, the trial court determined the jury's finding was not supported by factually sufficient evidence. But, the trial court's detailed discussion of the evidence following that statement made clear to the supreme court that the trial court believed the evidence showed as a matter of law that the insurer breached the policy. *See id.* at 178–79. The supreme court characterized that portion of the order as reflecting a "muddled legal- and factual-sufficiency evaluation of the evidence." *Id.* at 179.

[3] In the jury charge the trial court instructed the jury that "[n]egligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances."

15

trial order that there was a lack of evidence that the cyclist was negligent as he approached and entered the crosswalk.

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *Id.* The factfinder is the only judge of witness credibility and the weight to give to testimony. *Id.* at 819.

Presuming for the sake of argument that a finding of legal insufficiency of the evidence properly may support an order granting a new trial, we conclude that legally sufficient evidence supports the jury's finding that the cyclist was negligent. The new-trial order omits several pieces of evidence, any or all of which the jury reasonably could have credited in support of its determination of negligence. The driver testified he looked to his right and saw the cyclist, then looked to his left and saw the pedestrian, then looked to his right a second time but no longer saw the cyclist. From that testimony, the jury reasonably could have inferred the cyclist already had moved into the intersection and the jury reasonably could have believed that the cyclist's doing so was unreasonable under the circumstances. The jury could have assigned more weight to the driver's testimony that he "creeped up a little bit" than to the cyclist's testimony that the driver was "at a dead stop" and "just sat there" and then "revved" his engine. The jury reasonably could have found the cyclist's assumption that the driver could see him and was letting him go first was unreasonable, such that the cyclist's riding into the intersection was negligent. Likewise, the jury reasonably could have found the cyclist's riding his bicycle on

16

the left-hand (north) side of Seawall Boulevard rather than on the right-hand (south) side was negligence that proximately caused the occurrence.

Because the evidence is legally sufficient to support the jury's finding that the cyclist was negligent, the trial court erred in concluding there was a lack of evidence that the cyclist was negligent as the cyclist approached and entered the crosswalk.

We presume that the trial court found the trial evidence factually insufficient to support the jury's finding that the cyclist's negligence proximately caused the occurrence. After considering and weighing all the evidence, we conclude the trial evidence supporting this finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Maritime Overseas Corp.*, 971 S.W.2d at 406–07. Thus, the trial evidence is factually sufficient to support this finding, and the record does not support the granting of a new trial based on factual insufficiency of the evidence to support this finding. *See id.*

**b. The record does not support the trial court's conclusion that the jury's 83%-17% apportionment of responsibility is against the great weight and preponderance of the evidence.**

Under Chapter 33 of the Civil Practice and Remedies Code, the trier of fact must determine the percentage of responsibility of certain persons for the harm at issue. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.003(a). The law gives the trier of fact—in this case, the jury—wide latitude in determining the negligent parties' proportionate responsibility. *See Jackson v. William Bros. Constr. Co.*, 364 S.W.3d 317, 325 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). Even if the evidence could support a different percentage allocation, we may not substitute our judgment for that of the jury. *See Samco Props., Inc. v. Cheatham*, 977 S.W.2d 469, 478 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

The trial court decided that "the combination of these facts [regarding the

17

positions and actions of the cyclist and the driver] and lack of evidence [of negligence by the cyclist]" undermines the jury's proportionate-responsibility finding. The record does not support the trial court's conclusion that there was a "lack of evidence" of the cyclist's negligence. After considering and weighing all the evidence, we conclude the trial evidence supporting the jury's findings in response to Question 2 is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Maritime Overseas Corp.*, 971 S.W.2d at 406–07. Thus, the trial evidence is factually sufficient to support these findings, and the record does not support the granting of a new trial based on factual insufficiency of the evidence to support these findings. *See id.*; *Samco Props., Inc.*, 977 S.W.2d at 478 ("Having found sufficient evidence that both Wal–Mart and Cheatham were at fault, we find no basis for interfering with the jury's apportionment of negligence.").

## V.    CONCLUSION

The trial evidence stands factually sufficient to support both the jury's findings that the cyclist's negligence proximately caused the occurrence and the jury's comparative-responsibility findings. The record does not support the reasons the trial court gave for granting a new trial. Thus, we conditionally grant the petition for writ of mandamus and direct the trial court to vacate its August 3, 2018 order granting a new trial. We are confident the trial court will act in accordance with this opinion. The writ of mandamus will issue only if the trial court fails to do so.


/s/     Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Jewell and Bourliot.

18