

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00118-CV

IN RE:  JONATHAN SCOTT BAKER AND SHANNON COMPTON, D/B/A
AMERICAN OUTDOOR TRANSPORTATION

Original Mandamus Proceeding

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss
Concurring Opinion by Justice Carter

# O P I N I O N

On a dark, stormy night, the vehicle occupied by Charles D. Windham, II, and Bryan Waller collided with rolled bales of hay that had fallen onto the highway from a flatbed trailer pulled by Jonathan Scott Baker. Windham and Waller sued Baker and his employer, Shannon Compton d/b/a American Outdoor Transportation, for negligence.

After hearing the evidence, including Baker's detailed testimony of his actions to secure his load preceding the accident, a Panola County jury answered in the negative the first jury question, finding that Baker's negligence, if any, did not proximately cause the collision. On June 28, 2013, Baker and Compton moved for judgment on the verdict. In response, on July 8, Windham and Waller filed a "motion to set aside the verdict and for mistrial," which alleged that the jury's answer was "contrary to the great weight and preponderance of the evidence."

Over Baker and Compton's objections, on October 21, 2013, the trial court granted Windham and Waller's motion for a "mistrial," set aside the jury verdict, and ordered that the case "be returned to the jury docket and set for a new trial" on the ground that the evidence was not factually sufficient to support the jury's verdict. Instead of proceeding with a new trial, Plaintiffs filed a notice of nonsuit, which the trial court granted November 1, 2013.

By petition for writ of mandamus, Baker and Compton (Relators) ask this Court to order the trial court to vacate its order setting aside the jury verdict, to vacate the nonsuit, and to "enter judgment on the verdict reached by the jury at trial." After reviewing the petition and response, we grant Relators' petition because (1) we are to review the merits of the reason stated for

2

granting a new trial, (2) the stated reason for granting a new trial was misplaced, and (3) the nonsuit was untimely and inappropriate.

*(1)     We Are To Review the Merits of the Reason Stated for Granting a New Trial*

The Texas Supreme Court has recently held that "an appellate court may conduct a merits review of the bases for a new trial order after a trial court has set aside a jury verdict."[1]  *In re Toyota Motor Sales*, *U.S.A., Inc*., 407 S.W.3d 746, 749 (Tex. 2013).  The main issue in this case was whether the Plaintiffs met their burden to prove (a) that Baker breached his duty of care by failing to properly secure the bales of hay that fell from his truck and (b) that such negligence was a proximate cause of the Plaintiffs' collision.  The order granting the new trial referred to standards requiring the load to be secured and stated,

> Baker could offer no explanation for the occurrence.  The evidence established that the straps that were on Baker's trailer at the time of the incident did not break and were not defective, and Compton testified that he had "no reason to believe there's anything with the condition of the straps that had anything to do with the hay falling off."  Further, there was no evidence of any event or condition that could not reasonably be expected to occur in normal driving that could explain the hay falling from the trailer.
>
> As there was no evidence of any unforeseeable or abnormal operating conditions, nor of anything other than Baker's failure to properly secure the cargo to explain the occurrence, the fact that the cargo did fall off was overwhelming evidence that Baker's negligence was a proximate cause of the occurrence in question.  Under these circumstances, the Court finds that the jury's refusal to find that Baker's negligence was a proximate cause of the occurrence was against the great weight and preponderance of the evidence and was manifestly unjust.[2]

---

[1]Mandamus issues only when the mandamus record establishes (1) a clear abuse of discretion or the violation of a duty imposed by law, and (2) the absence of a clear and adequate remedy at law.  *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding); *see In re Columbia Med. Ctr. of Las Colinas Subsidiary, L.P*., 290 S.W.3d 204, 207 (Tex. 2009) (orig. proceeding).

[2]The trial court's ruling that Baker could offer no explanation improperly shifts the burden of proof.

3

We now examine the record in this case to determine whether there was an abuse of discretion in granting a new trial.

*(2)     The Stated Reason for Granting a New Trial Was Misplaced*

Baker, who had been a truck driver for over thirty years, testified that he previously had never had an accident or lost a load.  On the day of the accident, Baker was assigned to haul "48 to 52 rolls of hay" from Creole, Louisiana, to Sulphur Springs, Texas.  He testified that, although he did not load the hay, he was satisfied with how it had been loaded and admitted that he was responsible for securing the bales.  Baker testified that he placed "between 18 to 21 straps" on the load, "packed them down, [and] made sure everything was put where it need[ed] to be and [was] proper to go."  He testified in detail about the number and type of straps that were used and where they were placed.  He tightened the straps using a ratchet and tested the tension on the straps and the binder.  Baker completed his pre-trip inspection and hit the road.

Baker testified that he first stopped in Lake Charles, Louisiana, in the first fifty miles after loading, to check the load, and again at a "wide spot on the highway" somewhere in Louisiana.  Baker then stopped to eat in Burkeville, Texas, and inspected the bales before resuming the drive.  He stopped for coffee in Carthage, Texas, "and checked [the] load" by pulling on every strap.  He "tightened the [straps] on the back, . . . two in the middle, and one on the front" before continuing on his trip.

It was dark and "[r]aining heavily."  Baker did not notice when, a few miles from the truck stop, six rolls fell from the back of the trailer.  He testified that, after he crossed a "bumpy" and "rough" set of railroad tracks, "a gentleman flagged me down . . . and told me I was losing

4

my load." The four straps that specifically had secured the fallen bales were still attached to the trailer, and Baker testified that there was nothing wrong with the straps. He pulled over and waited for an officer to arrive.

Baker testified that he did not know how or why the hay fell because he "kept the straps as tight as possibl[e]," "checked them periodically," and "did everything [he] possibly could to make sure that [the hay] would not come off." Compton also testified that the load was properly secured. He testified that the working load limit for a two-inch strap is 1,600 pounds, and 5,500 for a four-inch strap. Baker used eighteen to twenty-one straps; some were two-inch straps while others were four inches wide. There were forty-eight to fifty-two bales of hay weighing anywhere from "300 to 500 pounds" each, depending on the way the farmer rolled the bales. Even assuming that each bale weighed 500 pounds, and that only two-inch straps were used, the number of straps used would have been sufficient to contain the weight of the load according to Compton's testimony. Compton testified that, if the straps had been placed on the hay like he "had seen Mr. Baker do it in the past," there was "no way" that the hay would have fallen from the truck.

Rodney Dean Ellis, II, testified as the Plaintiffs' expert. Ellis was a safety consultant who had "been in several different aspects of the trucking industry,"[3] and described his work as "accident investigation, which entails a lot of compliance reviews, driver log audits and things of that nature." Over objection, Ellis testified that the police officer's report contained notations "load not secured" and that Baker "may have contributed" to the accident. Ellis testified that

---

[3]The jury heard that Ellis' commercial driver's license was temporarily suspended for ninety days in 2001 after a positive drug test showed he had taken methamphetamine during a long haul from California to Florida.

American Outdoor Transportation was a United States Department of Labor interstate carrier which was required to comply with cargo securement regulations.

Ellis believed that the load was improperly secured.[4] He testified that "the requirement is that he stops within 50 miles after initially taking off. And then he stops again and checks his load within 150 [miles] or three hours, whichever comes first." Baker testified that he complied with those requirements. However, Ellis noted that, while Baker's driver's log on the date of the accident "show[ed] him doing a PTI, which is a pre-trip inspection, in Louisiana," there was "no indication where he stopped anywhere to do an inspection." The logs revealed only that Baker stopped in Burkeville and in Carthage.

Baker explained the lack of a log entry to the jury:

> [O]n that log sheet, they do not put for every minute that you are there. They put for a 15-minute increment. If you put a mark in there and you are not stopped for 15 minutes, you have no way to put a time on there. You're not allowed to do that. It has to be -- if you stop and go off duty, on duty not driving, you have to show 15 minutes. If I do not take a complete 15 minutes to do something, I do not generally mark it. I leave it as driving, not anything else.

Ellis also testified:

> Mr. Baker testified that he had I believe he said he had two 90-degree straps over the top of the back rolls. And then he had two of these 45s. We call these the 45-degree straps.
>
> Like I was just explaining, there's really nothing holding these back two bales on there without these 45s, to a certain degree. I mean, the 90-degree straps will do a sufficient job until they start to come loose.[5]

---

[4]Ellis based his opinion on alleged past violations for which Baker had received warnings.

[5]At the time of his deposition, Ellis admitted that he did not know how many bales of hay the trailer contained, how they were loaded, how many straps were used, or the strength and type of the straps.

6

Ellis claimed that, "if it had been strapped the way that they usually did, it wouldn't have fallen off."[6]   During cross-examination, Ellis stated that he was not offering any opinions on negligence during the incident because "[t]hat's a jury question to ask."

Plaintiffs' counsel argued during closing that, had Baker properly secured the load, the hay would not have fallen.  Counsel for Relators argued that the Plaintiffs had not met their burden to demonstrate that the bales of hay fell due to Baker's negligence and further characterized Baker's testimony that he secured the load and tightened the straps in Carthage as "not controverted by anyone other than to say there's some things not on his log books."  The jury found Baker credible and, by its answer to the single, two-part question, determined that he was not negligent or that any negligence was not a proximate cause of the collision.

"While a trial court has significant discretion in granting new trials, the Texas Supreme Court recently held that a trial court must specify its reasons for disregarding the jury's verdict by granting a new trial.  *In re Lufkin Indus., Inc.*, 317 S.W.3d 516, 519–20 (Tex. App.—Texarkana 2010, orig. proceeding [mandamus denied]) (citing *Columbia Med. Ctr.*, 290 S.W.3d at 212–15).  Here, the court stated its belief that this evidence was factually insufficient to sustain the jury's finding of no negligence.  "While a trial court has considerable discretion in granting a new trial, that discretion has limits."  *Id*. at 520 (citing *Columbia Med. Ctr.*, 290 S.W.3d at 210).  "That 'discretion should not, and does not, permit a trial judge to substitute his or her own views for that of the jury without a valid basis.'"  *Id*. (quoting *Columbia Med. Ctr.*, 290 S.W.3d at 212).

---

[6]He cited to a Cargo Securement Handbook for Driver's published by J.J. Keller, which stated, "[P]roperly secured load will remain secure under all conditions that could be reasonably expected to occur during normal driving."

In evaluating the factual sufficiency of the evidence, "we examine the entire record, considering the evidence in favor of and contrary to the challenged finding, and set aside the jury's verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Champion v. Robinson*, 392 S.W.3d 118, 123–24 (Tex. App.—Texarkana 2012, pet. denied) (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)). When parties attack the factual sufficiency of an adverse finding on an issue on which they had the burden of proof, as the Plaintiffs did in their motion for new trial, they must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 238, 242 (Tex. 2001). "The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment." *Bright v. Addison*, 171 S.W.3d 588, 595–96 (Tex. App.—Dallas 2005, pet. denied) (citing *Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804, 813–14 (Tex. App.—Dallas 2003, pet. denied)).

Ellis was the only witness presented by the Plaintiffs that spoke to Baker's alleged negligence. Although Ellis outlined the safety standards by which Baker was to comply, he never testified that Baker failed to meet these standards and left the issue of breach for the jury. Instead, Ellis questioned Baker's credibility by referring to the daily logs, which listed only two stops on the date of the accident, and by listing infractions that had been committed by Baker in the past.

Baker testified that he had never experienced losing a load. He detailed the procedure which he used to secure the hay. Compton and Ellis both testified that, if Baker had complied

8

with the procedures he claimed to have employed on the date of the accident, the hay would not have fallen from the trailer. Baker explained why he did not list all of the stops that he made during the trip on the daily log. He testified that he checked the load and tightened loose straps just a few miles from where the accident occurred.

This Court is not a fact-finder and may not assess the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if a different conclusion could be reached on the evidence. *See Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988). This case turned on Baker's credibility. The jury believed him.

Yet, in its order granting a new trial, the trial court found that, because the bales of hay fell from the truck, they must have been improperly secured. The court's judgment suggests it employed the rule res ipsa loquitur. Res ipsa loquitur is not a stand-alone cause of action, but merely a rule of evidence permitting an inference of negligence by the fact-finder where the character of the accident is such that it would not ordinarily occur in the absence of negligence and the instrumentality causing the injury is shown to have been under the defendant's management and control. *Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (Tex. 1990); *see Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 604 (Tex. 2004) (Hecht, J., concurring); *Burchinal v. PJ Trailers-Seminole Mgmt. Co., L.L.C.*, 372 S.W.3d 200, 220 (Tex. App.—Texarkana 2012, no pet.). The jury was charged in accordance with the doctrine and rejected it.

The Texas Supreme Court has explained that the application of the rule still leaves a question of fact for the jury to answer:

9

Texas courts have quoted with approval the following language of the U.S. Supreme Court in *Sweeney v. Erving*, 228 U.S. 233, 240, 33 S.Ct. 416, 418, 57 L.Ed. 815 (1913):

"In our opinion, [r]es ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff."

As tersely put above, the effect of successfully invoking the [r]es ipsa doctrine is that the plaintiff can survive no-evidence procedural challenges—he has produced some evidence of the defendant's negligence. He is in the same position as any other plaintiff who has made out a case for the jury. No presumption of the defendant's negligence arises; the jury is merely free to infer negligence. The plaintiff continues to have the burden of persuading the jury by a preponderance of all the evidence that the defendant was negligent. While it is often said that [r]es ipsa places the burden of going forward with the evidence on the defendant, it is the rare [r]es ipsa case where the defendant is in danger of a directed verdict if he chooses not to explain the accident. This is because the inferences to be drawn from the circumstances of the accident are within the province of the jury, not the court. Only in extraordinary circumstances does the mere occurrence of the accident so strongly compel a conclusion that the defendant was negligent that the jury could not reasonably find otherwise.

*Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 251–52 (Tex. 1974) (citations omitted).[7]

As the evidence set forth above demonstrates, the jury could have found that the hay, which was loaded by a farmer, might have become loose when Baker ran over the "bumpy" and "rough" train tracks despite Baker's testimony that he was "satisfied" and "had no complaints" with the way the hay was loaded at the time of his departure. The jury could have also found

---

[7]Moreover, the rule "may not be applied in those circumstances when the use of the instrumentality is not within common knowledge of laymen." *Burchinal*, 372 S.W.3d at 221 (citing *Haddock*, 793 S.W.2d at 951).

that the hay shifted in the heavy rain after Baker last checked the load. "The truth is, sometimes accidents are no one's fault," and a jury is "not required to find someone at fault." *Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d 753, 757 (Tex. 2006).

The evidence is factually sufficient to support the adverse finding if the evidence is such that reasonable minds could differ on the meaning of the evidence or the inferences and conclusions to be drawn therefrom. *Cendant Mobility Servs. Corp. v. Falconer*, 135 S.W.3d 349, 352 (Tex. App.—Texarkana 2004, no pet.). Here, the evidence was sufficient for the jury to find that Baker complied with the standards and duties required of him in securing the load. Therefore, the grant of the new trial improperly intruded on the jury's province, and judgment should have been rendered on the verdict as requested by Relators.[8]

*(3)    The Nonsuit Was Untimely and Inappropriate*

Relators also suggest that the trial court erred in ordering a nonsuit with prejudice pursuant to Plaintiffs' notice. "Under Texas law, a plaintiff has an absolute right to take a nonsuit "[a]t any time before the plaintiff has introduced all of his evidence other than rebuttal evidence." TEX. R. CIV. P. 162 (titled "Dismissal or Non-Suit"); *In re Riggs*, 315 S.W.3d 613, 615 (Tex. App.—Fort Worth 2010, orig. proceeding) (citing *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010); *Villafani v. Trejo*, 251 S.W.3d 466, 468–69 (Tex. 2008); *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 840–41 (Tex. 1990); *Greenberg v. Brookshire*, 640 S.W.2d 870, 871 (Tex. 1982)). If a notice of nonsuit is timely filed, it "extinguishes a case or controversy from 'the moment the motion is filed.'" *Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex.

---

[8]Relators requested the trial court to enter judgment on the verdict June 28, 2013.

2011) (quoting *Joachim*, 315 S.W.3d at 862; *Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 100 (Tex. 2006) (per curiam)).[9]

Here, the notice of nonsuit was untimely. It came not only after Plaintiffs had introduced all their evidence, but after the jury had returned its defense verdict. Though the grant of a new trial complicates this issue, we have determined that the new trial was improperly granted. Without a properly granted new trial, the nonsuit was late. We acknowledge that the Texas Supreme Court has stated, "[C]ircumstances may arise which, in a court's discretion, constitute[] grounds for a nonsuit late in a trial." *O'Brien v. Stanzel*, 603 S.W.2d 826, 828 (Tex. 1980). The court wrote, "We do not hold that there are no situations in which a trial court may exercise discretion even though the trial has progressed beyond the rule's point of no return." *Id.*; *see Miller v. Sam Montgomery Oldsmobile Co.*, 656 S.W.2d 917, 918 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd). No authority suggests that, here, the trial court was permitted discretion to grant the nonsuit without prejudice. Moreover, obtaining a nonsuit without prejudice after a jury has returned its verdict entices a plaintiff to re-file his lawsuit in hopes of securing a jury sympathetic to his position. This practice should be viewed with extreme skepticism, as it tends to undermine the legitimate role of the jury in our system of jurisprudence.

---

[9]A nonsuit without prejudice is not a decision on the merits.

12

We grant the Relators' petition for writ of mandamus. In accordance with this opinion, we direct the trial court to set aside its order granting a new trial, to set aside the order of nonsuit, and to enter judgment for Relators on the jury's verdict.

Josh R. Morriss, III
Chief Justice

CONCURRING OPINION

"New trials may be granted and judgment set aside for good cause, on motion or on the court's own motion on such terms as the court shall direct." TEX. R. CIV. P. 320.

As predicted in a concurring opinion in *In re Lufkin Industries, Inc.*, 317 S.W.3d 516, 521 (Tex. App.—Texarkana 2010, orig. proceeding), mandamus actions now allow a full-scale review of the sufficiency of the evidence in determining whether the trial court had "good cause" to grant a new trial. We no longer need to decide if an adequate remedy by appeal exists—mandamus now serves as an appeal. Trial judges have been relegated to serving as umpires of the trial, without authority to exercise their inherent judicial discretion.

Understanding that our Supreme Court has approved of a full-fledged factual and legal sufficiency review of the basis for a new trial, I must concur in this opinion. However, I am very concerned about other situations. Does the trial court clearly abuse its discretion in granting a new trial when one party interjected highly-prejudicial evidence that had been excluded? In such a case, merely reading the record will not illustrate the dynamics of the courtroom, the impact of the evidence, or the reaction of the participants and the jury. With the requirement of

13

an appellate review of every new trial order, the discretion of the trial courts inevitably will be eroded. I believe we will someday regret usurping this judgment and discretion from the trial courts.

I concur in the judgment.


Jack Carter
Justice

Date Submitted:     January 6, 2014
Date Decided:       January 7, 2014