

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00087-CV
_____

IN RE WILLIAM R. NORTON

Original Mandamus Proceeding

Before Stevens, Carter,* and Moseley,** JJ.
Opinion by Justice Stevens
Concurring Opinion by Justice Carter*

_____

*Jack Carter, Justice, Retired, Sitting by Assignment
**Bailey C. Moseley, Justice, Retired, Sitting by Assignment

# OPINION

Lasagna Vaughn sued William R. Norton for injuries allegedly caused in a motor vehicle collision. A Bowie County jury found that Norton's negligence proximately caused the collision and awarded Vaughn $21,886.00 in past physical pain and mental anguish and $23,114.00 in past medical expenses. Even so, the jury awarded no damages for past lost wages, loss of earning capacity, or past physical impairment. In early June 2019, the trial court entered judgment on the jury verdict. Shortly thereafter, the trial court granted Vaughn's motion for new trial.

As a result, Norton petitioned for a writ of mandamus claiming that (1) the trial court abused its discretion in granting a motion for new trial because "the stated rationale for vacating the jury's verdict failed to comport with the trial record" and (2) there is no adequate remedy by appeal. Norton is asking this Court to reverse the trial court's order granting a new trial, allowing the jury's verdict and damage awards to stand. Because we find that the record does not support the trial court's reasons for granting a new trial and Norton has no adequate remedy at law, we conditionally grant the petition for writ of mandamus.

## I. Background

In January 2017, Norton's vehicle rearended Vaughn's vehicle on Moores Lane in Texarkana. Vaughn stated that she was "shocked" by the collision but told Norton that she thought she was "okay." As a result of the collision, Vaughn's car sustained almost $3,000.00 in damage, but she was still able to drive it home. Norton's truck was undrivable after the accident.

Vaughn testified that, when she awoke the morning after the collision, she felt stiff, her shoulders and neck were hurting, and she felt a "stabbing pain" in her right elbow. She went to

her job as a certified nursing assistant (CNA) at The Waterford, a retirement and assisted-living facility, because she had a meeting at 9:00 a.m.[1] Yet, because of the pain in her elbow, she left work and went to the Texarkana Emergency Center (emergency room), where she rated her elbow pain at an eight on a scale of one to ten.

Vaughn was diagnosed with an elbow sprain, at first, and given a steroid injection, pain medication, muscle relaxers, and after-care instructions. She returned to work the next day and kept working for about two more weeks, when she returned to the emergency room because the pain in her elbow and shoulder had failed to subside. Vaughn also had trouble extending her arm or lifting anything with it. Following her second emergency room visit, she started ongoing treatment at Healthcare Express, where she claimed she "was going to the doctor . . . every two weeks or every month" because the injury "was getting worse."

In May 2017, about five months after the collision, Vaughn had an MRI test performed on her elbow, which revealed "lateral epicondylitis [with] a partial tear of the common extensor tendon origin." In October 2017, when the prescribed physical therapy did not improve her condition, she was referred to Dr. Ellis Cooper at Orthopedic Specialists of Louisiana, who agreed with the diagnosis from the previous MRI. In December 2017, when further treatments such as injections and dry needling failed to achieve satisfactory results, Dr. Cooper informed Vaughn that

---

[1]Before the collision, Vaughn had worked for many years as a CNA at The Waterford. As part of her job duties, she would have to lift, roll, and stabilize patients as well as help them eat, dress, and bathe. She testified that she performed that type of work with no physical problems for more than a decade but that, in 2010, seven years before the collision, her job duties changed to those of a marketer, performing office work at a desk rather than physically moving patients.

her elbow would require surgery. In January 2018, Dr. Cooper performed the surgery to repair Vaughn's elbow. Six weeks after the surgery, Vaughn returned to full-time work at The Waterford.

Following her first surgery, Vaughn claimed that her elbow, arm pain, and mobility had not significantly improved and that she was unable to brush her hair or carry a gallon of milk. Even so, she did not seek more medical intervention for several months. Ultimately, she returned to Dr. Cooper, who performed a second surgery on her right forearm. Even after the additional surgery, Vaughn said that her elbow was no better than it had been before the first surgery, that she lived with significantly reduced mobility in the elbow, and that she was in constant pain.

Vaughn's employer eventually eliminated her "front office," desk-based marketer's position. Vaugh claimed that, because of the continuing pain and limitations in her arm, she was unable to perform her former job duties as a CNA. As a result, The Waterford terminated her employment. As of the time of trial, Vaughn testified that she had been unable to find other employment as a CNA.

Vaughn sued Norton, alleging that, as a result of the January 2017 collision, she (1) injured her neck, back, and shoulders;[2] (2) developed right lateral epicondylitis, commonly known as "tennis elbow," and right radial tunnel syndrome, which both required surgery; (3) incurred $61,024.61 in past medical expenses;[3] (4) incurred damages for physical pain, mental anguish,

---

[2]Vaughn testified that the injuries to her back, neck, and shoulder only lasted a few weeks.

[3]Vaughn introduced nine medical expense affidavits at trial that were not controverted by Norton. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(b), (e)–(f) (Supp.).

physical impairment, lost earnings and disfigurement—both past and future; and (5) incurred future medical expenses.

Whether and to what extent the collision proximately caused Vaughn's elbow injury was the primary issue in dispute during the trial. At the trial's conclusion, the jury found that Norton's negligence "proximately cause[d] the occurrence in question" and awarded Vaughn $21,886.00 in past physical pain and mental anguish and $23,114.00 in past medical expenses. The jury awarded no damages for all other elements of damage submitted to the jury—future physical pain and mental anguish, past and future loss of wages and earnings capacity, past and future physical impairment, future medical expenses, and past and future disfigurement. In June 2019, the trial court entered judgment on the jury verdict.

Around two weeks later, the trial court granted Vaughn's motion for new trial, setting aside the jury verdict on the grounds that the verdict was against the great weight and preponderance of the evidence presented at trial. Norton then petitioned for a writ of mandamus, seeking to vacate the order because it failed to explain the basis of the trial court's conclusion. *In re Norton*, No. 06-19-00074-CV, 2019 WL 4064580, at *1 (Tex. App.—Texarkana Aug. 29, 2019, orig. proceeding) (mem. op.). After Norton filed his petition, the trial court entered an amended order granting a new trial. The amended order explained that the evidence on Vaughn's tennis elbow injury did not support the jury's refusal to award Vaughn full damages for her past medical expenses or its award of no damages for past wages and loss of earning capacity and past physical impairment. *Id.* Shortly thereafter, Norton filed this petition for writ of mandamus, again arguing (1) that the trial court abused its discretion in granting the new trial because the record supported

5

the jury's awards for medical expenses, past lost wages and earning capacity, and past physical impairment and (2) that he has no adequate remedy at law.

## II. The Record Does Not Support the Trial Court's Reasons for Granting a New Trial

In his first issue, Norton claims that the trial court's "stated rationale for vacating the jury's verdict failed to comport with the trial record." We agree.

### A. Standard of Review

To be entitled to mandamus relief, the relator must show that (1) he has no adequate remedy at law and (2) the trial court clearly abused its discretion. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 462 (Tex. 2008) (orig. proceeding). A clear abuse of discretion occurs if a trial court reaches a decision "so arbitrary and unreasonably as to amount to a clear and prejudicial error of law." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding) (quoting *Johnson v. FCOA*, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding)). "In determining whether the trial court abused its discretion with respect to resolution of factual matters, we may not substitute our judgment for that of the trial court and may not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable." *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (orig. proceeding) (per curiam).

That said, the "significant discretion" of a trial court to grant a new trial "should not, and does not, permit a trial judge to substitute his or her own views for that of the jury without a valid basis."[4] *Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d at 212. "[T]he long-

---

[4]Historically, Texas courts enjoyed broad discretion when granting new trials. *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 210 (Tex. 2009) (orig. proceeding). However, the Texas Supreme Court has taken steps to protect the right to trial by jury under the Texas Constitution by imposing certain requirements for

established precedents in this state demonstrate respect for jury verdicts." *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988). Thus, when granting a new trial, a trial court must explain with reasonable specificity why it has set aside a jury verdict and granted a new trial. *Toyota Motor Sales*, 407 S.W.3d at 757. The trial court may not simply parrot a pro forma template but must instead articulate the reasons from the facts and circumstances of the case. *Bent*, 487 S.W.3d at 173.

The appellate court must then conduct a "merits-based review" of the trial court's order and determine whether the reasons given by the trial court are reasonably specific and legally sound and whether those reasons are supported by the record. *Id. at* 177. This merits-based review is conducted under "the abuse-of-discretion standard that is familiar and inherent to mandamus." *Id.* Yet, if the record contains evidence that contradicts the trial court's articulated reasons, then the trial court has abused its discretion and the new trial order cannot stand. *Id.*; *see In re Orren*, 533 S.W.3d 926, 933 (Tex. App.—Tyler 2017, orig. proceeding).

When, as here, "the trial court grants a new trial because the jury's finding was against the great weight and preponderance of the evidence, we review the entire trial record to determine, using a factual sufficiency standard, whether the record supports the trial court's reasoning." *In re Pantalion*, 575 S.W.3d 382, 383 (Tex. App.—Beaumont 2019, orig. proceeding) (per curiam) (citing *In re E.I. duPont de Nemours & Co.*, 463 S.W.3d 80, 85 (Tex. App.—Beaumont 2015, orig.

---

granting a new trial. *See In re Bent*, 487 S.W.3d 170, 172–73, 175 (Tex. 2016) (orig. proceeding); *In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 757–58 (Tex. 2013) (orig. proceeding); *In re United Scaffolding, Inc.*, 377 S.W.3d 685, 688–89 (Tex. 2012) (orig. proceeding); *Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d at 213. Unlike the past, there are now more limits to the trial court's discretion. *Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d at 210.

proceeding) (per curiam)); *see also In re Athans*, 478 S.W.3d 128, 133–34 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding) (applying factual sufficiency analysis to mandamus proceeding challenging grant of new trial based on factual insufficiency); *In re Baker*, 420 S.W.3d 397, 402–04 (Tex. App.—Texarkana 2014, orig. proceeding).[5]  "The amount of evidence necessary to support the jury's verdict is far less than that necessary to warrant disregarding the jury's verdict." *Pantalion*, 575 S.W.3d at 384 *(quoting In re Zimmer, Inc.*, 451 S.W.3d 893, 906 (Tex. App.—Dallas 2014, orig. proceeding)).

## B.     The Trial Court's Order is Facially Valid

When granting a new trial, the trial court must "assur[e] the parties that the jury's decision was set aside only after careful thought and for valid reasons." *Bent*, 487 S.W.3d at 176.  To that end, the trial court must articulate specific reasons for granting the new trial and explain how the evidence, or lack thereof, undermines the jury's findings.  *Id.* at 183.

Here, the trial court's amended order granting a new trial stated, in pertinent part,

> The jury verdict in this matter is so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias and therefore a new trial is required.
>
> The only probative evidence in the record is that Plaintiff's elbow was entirely asymptomatic and had not required any medical treatment before the motor vehicle collision . . . . The only probative evidence in the record is that Plaintiff had significant pain in her right elbow at the time she presented to the emergency room the day after the motor vehicle collision with Defendant which gave her significant mobility concerns and restricted and limited her ability to use her right arm. . . . It was undisputed at trial that, after the motor vehicle collision with Defendant, Plaintiff was eventually, and properly, diagnosed with epicondylitis and that the

---

[5]The Texas Supreme Court has not yet addressed how appellate courts should apply its merits review to an order granting a new trial based on factual insufficiency.  *See Bent*, 487 S.W.3d at 177–78; *Toyota Motor Sales, U.S.A.*, 407 S.W.3d at 757–58.

care she received, including surgery, was reasonable and necessary treatment of her epicondylitis.

[The] Defendant's [expert] avoided and never addressed whether the motor vehicle collision with Defendant proximately caused Plaintiff's elbow to go from (a) being entirely asymptomatic to (b) causing such pain as to require surgery and other extensive medical care, weeks off of work, limited use of her arm, and other alleged damages.

. . . .

The only probative evidence in the record is that the . . . collision proximately caused Plaintiff to incur [more than $60,000 in] medical expenses to treat her elbow, including to treat epicondylitis, and there was no probative evidence to the contrary. . . .

. . . [T]he only probative evidence in the record is that the . . . collision . . . proximately caused Plaintiff to not only . . . miss a day of work to go to the emergency room after the motor vehicle collision but also to be unable to work at all for at least several weeks following surgery. . . .

. . . [T]he only probative evidence in the record is that the . . . collision . . . proximately caused Plaintiff to suffer at least some compensable physical impairment . . . [because the injury] caus[ed] such pain as to require surgery and other extensive medical care, weeks off of work, limited use of her arm, and other alleged damages.

We find that the trial court's order stated facially appropriate reasons for granting the new trial. "[T]he trial court's order recites that the verdict was [so] 'against the great weight and preponderance of . . . the evidence,' which is a legally sound reason to grant a new trial." *In re Peterson Constr., Inc.*, No. 13-15-00535-CV, 2016 WL 3548643, at *6 (Tex. App.—Corpus Christi Jun. 17, 2016, orig. proceeding, [mand. denied]) (mem. op.) (quoting *United Scaffolding*, 377 S.W.3d at 888–89). The order also contained reasonably specific explanations of the trial court's reasoning. As a result, we conclude that the trial court's order is facially valid.

9

### C. Factual Sufficiency Analysis

#### 1. Causation

Having found the trial court's order facially valid, we must next determine whether any of the trial court's stated reasons for granting a new trial are supported by the record. *See Bent*, 487 S.W.3d at 173. If any of the reasons given for granting the new trial satisfy the standards explained in *Toyota Motor*, *Columbia Medical Center*, *and United Scaffolding*, then the trial court did not abuse its discretion in ordering a new trial, and we will deny mandamus relief. *See In re United Servs. Auto. Ass'n*, 446 S.W.3d 162, 171 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding).

It was undisputed that (1) the collision occurred in January 2017, (2) Vaughn was properly diagnosed with tennis elbow in May 2017, (3) her elbow condition required surgery, (4) Vaughn incurred significant medical expenses for treatment and surgery on her elbow, (5) Vaughn's six weeks of surgical recovery were reasonable and necessary, (6) Vaughn was unable to work during those six weeks, and (7) Vaughn lost earnings during the time she was unable to work. The issue, therefore, is whether the trial court's implicit finding that the only probative evidence is that the collision proximately caused Vaughn's tennis elbow is supported by the record.

"The jury is the sole judge of the witnesses' credibility, and it may choose to believe one witness over another, and a reviewing court may not impose its own opinion to the contrary." *Orren*, 533 S.W.3d at 931 (citing *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)). "The jury '[may] believe all or any part of the testimony of any witness and disregard all or any part of the testimony of any witness.'" *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 774–75 (Tex. 2003) (quoting *Pilkington v. Kornell*, 822 S.W.2d 223, 230 (Tex.

10

App.—Dallas 1991, writ denied)). Furthermore, the jury "may disregard physician testimony on . . . the causal relationship between the accident and the plaintiff's injuries, even if that testimony is not contradicted." *Mauricio v. Cervantes*, No. 04-16-00260-CV, 2017 WL 2791324, at *2 (Tex. App.—San Antonio June 28, 2017, no pet.) (mem. op.) (citing *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *Barrajas v. VIA Metro. Transit Auth.*, 945 S.W.2d 207, 209 (Tex. App.—San Antonio 1997, no writ)).

Here, the jury heard evidence from Vaughn's expert, Dr. Cooper, and Norton's expert, Dr. Bernie McCaskill, who both agreed that tennis elbow is caused by either trauma or degeneration through repetitive activity.[6] Dr. Cooper testified that the collision caused Vaughn's tennis elbow, including the torn tendon. Even so, Dr. Cooper's operative report stated that Vaughn's tendon "showed evidence of degeneration." He also testified that tennis elbow is most common from repetitive injuries, which cause degeneration. Moreover, Dr. Cooper admitted that the degeneration in Vaughn's tendon could have existed before the collision.

Dr. McCaskill agreed that the elbow pain that first brought Vaughn to the emergency room was "most likely caused by the car wreck." Yet, based on his examination of Vaughn's medical records, he did not see "a basis to say that [Vaughn] had epicondylitis at the time of her visit to the emergency room" on the day after the collision. He also noted that the records cited no objective, abnormal physical findings, such as bruising, abrasions, discoloration, or swelling in her elbow.

---

[6] While a torn tendon can be diagnosed through an MRI, a diagnosis of tennis elbow "is based on clinical symptoms and physical findings," because there is no diagnostic test for the condition.

11

Dr. McCaskill testified that it would take a "very significant trauma" to cause Vaughn's torn tendon and that the torn tendon was the basis for her surgery.

The jury also saw the medical records from Vaughn's emergency room visit the day after the accident that showed that an x-ray of her right elbow was taken. The x-ray of Vaughn's elbow was normal. It showed that "[n]o fracture, dislocation or radiopaque foreign body" was found.

The jury also heard testimony from Vaughn that she told Norton she was "okay" after the collision and that she did not go to the emergency room on the day of the accident. Vaughn also testified that she did not immediately feel any pain after the accident. Additionally, photos of Vaughn's car after the accident show minor damage, and she was able to drive her car home from the scene of the accident. Vaughn could also not confirm that she hit her elbow on anything during the accident. Finally, there was evidence that Vaughn's job responsibilities as a CNA, at one point in her career, involved repetitive activities including lifting, rolling, and stabilizing patients.

Based on all the testimony presented at trial, the jury could have reasonably disregarded Dr. Cooper's medical conclusions and concluded that Vaughn's tennis elbow resulted from a pre-existing condition. Thus, the trial court's implicit finding that the only probative evidence in the record is that the collision proximately caused Vaughn's tennis elbow is not supported by the record.

### 2. Lost Wages

The trial court's order also states that the only probative evidence in the record is that the accident proximately caused Vaughn to "not only miss a day of work to go to the emergency room . . . but also to be unable to work at all for at least several weeks following surgery." The trial

12

court, therefore, found the jury's failure to award Vaughn any damages for lost wages against the great weight and preponderance of the evidence.

The jury heard evidence that Vaughn went to work the day following the accident. After a short time at work, Vaughn went to the emergency room because of the pain in her elbow. That said, Vaughn testified that she could not identify any lost wages in 2017. She also testified that the only lost earnings she knew about were from the six-week period following her surgery in January 2018. Moreover, the jury saw Vaughn's employment payroll records and heard testimony from Vaughn that her earnings after the accident were consistent with her earnings before the accident.

As a result, if the jury did not believe Vaughn's tennis elbow was caused by the accident, and Vaughn testified that she had no lost wages in 2017, the jury could have reasonably concluded that Vaughn was not entitled to any lost wages. We, therefore, find that the trial court's conclusion that the jury's award of zero dollars for lost wages sustained in the past was against the great weight and preponderance of the evidence is not supported by the record.

### 3. Physical Impairment

The trial court's order states that "the only probative evidence in the record" is that the accident proximately caused Vaughn to incur "at least some compensable physical impairment." The trial court also found that the jury's award of zero damages for physical impairment sustained in the past was "against the great weight and preponderance of the evidence."

In *Golden Eagle Archery*, the Texas Supreme Court held,

> In keeping with the principles that a court may not substitute its judgment for that of the jury and that the jury is the sole judge of the weight and credibility of testimony, courts should not conclude that a jury's failure to award any damages for physical impairment is against the great weight and preponderance of the evidence simply because there is objective evidence of an injury.

*Golden Eagle Archery, Inc.*, 116 S.W.3d at 774. Furthermore, "when a jury is presented with conflicting evidence about the existence and severity of a physical injury and associated pain, the jury 'could believe all or any part of the testimony of any witness and disregard all or any part of the testimony of any witness.'" *Id.* (quoting *Pilkington*, 822 S.W.2d at 230).

As we explained above on the issues of causation and lost wages, based on the evidence presented at trial, the jury could have reasonably believed that Vaughn's tennis elbow and related surgery expenses were not caused by the accident. The jury could have also disbelieved Vaughn's claims of physical impairment, as she continued to work from the day after the accident until her initial surgery in 2018. She was also able to attend and participate in physical therapy sessions. And there were large gaps in Vaughn's medical treatment, including at least one eight-week gap immediately following the accident and another six-month gap in 2018. Thus, there was evidence in the record from which the jury could have reasonably concluded that Vaughn was not entitled to damages for physical impairment.

For these reasons, the trial court's conclusion that the jury's award of zero dollars for physical impairment sustained in the past was against the great weight and preponderance of the evidence is not supported by the record.

14

### 4. Reduction of Vaughn's Medical Expenses

Vaughn presented evidence at trial of medical expenses totaling more than $60,000.00 for treatment of her injuries, including her tennis elbow and forearm surgeries. Even so, the jury only awarded Vaughn $23,114.00 for her medical expenses sustained in the past. As a result, the trial court found that "the jury's finding that $23,114[.00] would compensate Plaintiff for 'medical care expenses incurred in the past' . . . is so against the great weight and preponderance of the evidence."

When causation is contested, as was the case here, a jury may award damages it deems appropriate. *Harris v. Ranebenur*, No. 07-17-00014-CV, 2018 WL 3244858, at \*3 (Tex. App.—Amarillo July 3, 2018, no pet.) (mem. op). A "jury is not bound to award the damages set forth in an uncontroverted affidavit under section 18.001 [of the Texas Civil Practice and Remedies Code]." *Id.* "Ultimately, the determination of what is reasonable and necessary still falls within the province of the jury." *Id.* (citing *Atwood v. Pietrowicz*, No. 02-10-00010-CV, 2010 WL 4261600, at \*4 (Tex. App.—Fort Worth Oct. 28, 2010, no pet.) (mem. op.)).

For the reasons we explained above, there was sufficient evidence presented at trial for the jury reasonably to conclude that the accident did not cause Vaughn's tennis elbow or resulting surgeries. Thus, the jury was free to award Vaughn an amount of damages that it found appropriate. We, therefore, find that the trial court's reasoning is not supported by the record on this issue.

### III. Norton Has No Adequate Remedy by Appeal

In his second issue, Norton argues that he has no adequate remedy by appeal because requiring the parties to endure a new trial will waste significant time and money. We agree.

"The Texas Supreme Court has explained that 'absent mandamus review,' parties 'will seemingly have no appellate review' of orders granting new trials." *Orren*, 533 S.W.3d at 928 (citing *Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d at 209). "Even if a party could obtain appellate review of a new trial order following a second trial, it could not obtain reversal of an unfavorable verdict unless it convinced an appellate court that the granting of the new trial constituted harmful error." *Id.* "And even if an unfavorable verdict were reversed and rendered in [Norton's] favor, [he] would have lost the benefit of a final judgment based on the first jury verdict without ever knowing why, and would have endured the time, trouble, and expense of the second trial." *Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d at 209–10. We, therefore, hold that Norton has no adequate remedy by appeal.

## IV.     Conclusion

The jury's decision to award only part of Vaughn's past medical expenses while awarding her zero for past lost wages and past physical impairment was not against the great weight and preponderance of the evidence because there was evidence in the record to support such awards. Thus, the trial court's findings that "[t]he only probative evidence" in the record is that the collision proximately caused Vaughn to incur medical expenses, lost wages, and physical impairment are not supported by the record.

Finding that the trial court's stated reasons for granting a new trial are unsupported by the record and that Norton has no adequate remedy by appeal, we conditionally grant Norton's petition

16

for writ of mandamus, and direct the trial court to vacate its August 21, 2019, order granting a new trial. The writ of mandamus will issue only if the trial court fails to do so.


Scott E. Stevens
Justice


## CONCURRING OPINION

The majority opinion treats this case as if the trial court entered a judgment in accordance with the jury verdict and the plaintiff appealed on the ground that the jury's failure to answer questions in her favor was against the great weight and preponderance of the evidence. The standard traditionally used in that instance is: "When reviewing a jury verdict to determine the factual sufficiency of the evidence, the court of appeals must consider and weigh all the evidence, and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam) (citing *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex. 1985); *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951) (per curiam))."

Since this is a mandamus proceeding and not an appeal, it should be analyzed in accordance with mandamus review principles. The Corpus Christi court clearly stated how appellate courts should approach the review of a new trial granted for insufficiency of evidence. "Here we are reviewing the trial court's new trial order by mandamus under an abuse of discretion standard. We

17

are not performing a factual sufficiency review of a jury's verdict on appeal." *Peterson Const., Inc.*, 2016 WL 3548643, at \*10.

The Texas Supreme Court has stated that the review of the granting of a new trial should be conducted on the abuse-of-discretion standard. Simply reviewing such a case based on sufficiency of evidence, in the same manner as a review of an appeal of the jury verdict, does not comply with our requirement to employ the abuse-of-discretion standard. Other areas of the law have managed to meld these two concepts without doing violence to either.

For instance, in a review of a trial court's modification of a conservatorship order, legal and factual sufficiency of the evidence are relevant factors in assessing whether the trial court abused its discretion, but a trial court cannot be said to abuse its discretion as long as some evidence of a substantive and probative character supports its decision. *In re A.L.E.*, 279 S.W.3d 424, 427–28 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Bates v. Tesar*, 81 S.W.3d 411, 424–25 (Tex. App.—El Paso 2002, no pet.)).

I believe that a review as outlined above more accurately complies with our charge to review these matters based on the abuse-of-discretion standard. In this case, I do not believe such an analysis leads to a different conclusion. Consequently, I concur in the judgment.


Jack Carter
Justice

Date Submitted:     February 20, 2020
Date Decided:       February 21, 2020

18